A. Steven Dever, A. Steven Dever Co., L.P.A., 13363 Madison Avenue, Lakewood, Ohio 44107, Christopher M. Devito, Morganstern Macadams & Devito Co., 623 West St. Clair Avenue, Cleveland, Ohio 44113, ATTORNEYS FOR APPELLANTS
Tracy K. Stratford, Mariam Keramati, James R. Wooley, Katie M. McVoy, Jones Day, 901 Lakeside Avenue, Cleveland, Ohio 44114, For the Cleveland Clinic Foundation and Delos Cosgrove, M.D.
Kevin M. Butler, Law Director, Jennifer L. Swallow, Chief Assistant Law Director, 12650 Detroit Avenue, Lakewood, Ohio 44107, Robert E. Cahill, Sutter O'Connell Co., 1301 East 9th Street, 3600 Erieview Tower, Cleveland, Ohio 44114, For the City of Lakewood and Michael Summers
Lindsey M. Grant, Assistant Attorney General, 615 W. Superior Avenue, 11th Floor, Cleveland, Ohio 44113, Kristine L. Hayes, Joseph E. Schmansky, Associate Assistant Attorneys General, 150 East Gay Street, 23rd Floor, Columbus, Ohio 43215, For Ohio Attorney General Mike DeWine
Jennifer D. Armstrong, Ann Hunt, McDonald Hopkins, 600 Superior Avenue, East, Suite 2100, Cleveland, Ohio 44144, Sara E. Jodka, O. Judson Scheaf, McDonald Hopkins, L.L.C., 250 West Street, Suite 550, Columbus, Ohio 43215, For Lakewood Hospital Association and Thomas Gable
Thomas M. Ehrnfelt, Walter F. Ehrnfelt, Waldheger Coyne Co., L.P.A., 1991 Crocker Road, Suite 550, Westlake, Ohio 44145, For Lakewood Hospital Foundation, Inc., and Kenneth Haber
Aaron M. Bernay, Katherine A. Klaeren, David C. Olson, Frost Brown Todd, L.L.C., 3300 Great American Tower, 301 East Fourth Street, Cincinnati, Ohio 45202, For Subsidium Healthcare, L.L.C.
BEFORE: Blackmon, J., Boyle, P.J., and Laster Mays, J.
JOURNAL ENTRY AND OPINION
PATRICIA ANN BLACKMON, J.:
{¶ 1} Edward Graham, Marguerite Harkness, William Grulich, Deborah Meckes, and Amy Dilzel ("Plaintiffs") filed this lawsuit alleging several causes of action concerning the closing of Lakewood Hospital. The trial court dismissed Plaintiffs' complaint against all Defendants, which included the following: the city of *49 Lakewood ("the City"); Lakewood's Law Director, Kevin Butler; Lakewood's Mayor, Michael Summers; the Cleveland Clinic Foundation ("CCF"); CCF's former president and CEO Delos Cosgrove, M.D.; the Lakewood Hospital Association ("LHA"); LHA's Chairman, Thomas Gable; the Lakewood Hospital Foundation ("LHF"); LHF's president, Kenneth Haber; Subsidium Healthcare, L.L.C.; and Ohio Attorney General Mike DeWine (collectively "Defendants"). On appeal, Plaintiffs assign eight errors for our review.[1]
{¶ 2} Having reviewed the record and pertinent law, we affirm the trial court's dismissal of Plaintiffs' complaint.
I. Introduction
{¶ 3} Plaintiffs are five residents of the City who take issue with Defendants' agreement to close Lakewood Hospital and replace it with a CCF family health center ("the FHC"). Plaintiffs filed an 18-count complaint, attacking this issue from various angles and requesting various forms of relief.
{¶ 4} In counts 1A, 1B, and 1C, Plaintiffs, acting as taxpayers, allege a derivative action brought on behalf of the City to ensure that its officers do not abuse the municipality's corporate powers. In these taxpayer claims, the Plaintiffs stand in the shoes of the City, and their "rights or claims are no greater than the rights or interests of the municipality." Cincinnati ex rel. Ritter v. Cincinnati Reds , 150 Ohio App.3d 728, 2002-Ohio-7078, 782 N.E.2d 1225, ¶ 20 (1st Dist.). Upon review, we find that Plaintiffs' taxpayer claims have been resolved to the point that they are moot and no longer justiciable.
{¶ 5} Plaintiffs' remaining claims are unrelated to their status as taxpayers. We agree with the trial court that Plaintiffs have either failed to state a claim upon which relief can be granted or lack standing to bring these claims. The apposite facts and our analysis of the law follows.
II. Facts and Procedural History
{¶ 6} In 1930, the City took ownership of Lakewood Hospital and the real estate upon which it sits. In 1987, the City and LHA entered into an agreement in which the City leased Lakewood Hospital to LHA ("the Lease"). This changed the status of Lakewood Hospital from a public hospital to a private, nonprofit hospital. The Lease was renewed in 1996. Also in 1996, LHA and CCF entered into an agreement for the purpose of "integration of [LHA] and the CCF health care system" ("the Agreement"). Additionally, as part of the Agreement, CCF became the sole member of LHA. The practical result of the Lease and the Agreement was that CCF operated and managed Lakewood Hospital.
{¶ 7} The term of the Lease is 30 years, which ends January 2, 2027, although the Lease can be terminated under various conditions. There is no term for the length of the Agreement. However, the Agreement can be terminated by mutual consent of the parties.
{¶ 8} Plaintiffs allege that, beginning in 2005, Defendants "terminated * * * services offered by Lakewood Hospital" in violation of the Lease and the Agreement. For example, Plaintiffs allege that CCF was "turning away patients or sending them to other CCF wholly-owned hospitals [and] regional private ambulatory and public EMS services reportedly had been directed to transport patients to Fairview Hospital instead of Lakewood Hospital." Plaintiffs further allege that "[b]y terminating these services, CCF has been able *50 to pursue its strategy of crippling Lakewood Hospital to the point that CCF would have leverage when bargaining alongside LHA with the City to close Lakewood Hospital, prematurely exit its [Agreement] and Lease obligations, and build a new hospital in Avon, Ohio, of which CCF will have complete ownership and control."
{¶ 9} Plaintiffs also allege that, beginning in 2012, CCF "specified that medical services, equipment, and employees would be transferred gradually from Lakewood Hospital to Fairview Hospital * * * in preparation for the closure and razing of Lakewood Hospital as an inpatient acute care medical/surgical hospital." On January 14, 2015, CCF proposed closing Lakewood Hospital and building the FHC at the same location. This was memorialized in a public letter of intent signed by Cosgrove, Gable, and Haber.
{¶ 10} On April 12, 2015, Plaintiffs, as taxpayers pursuant to R.C. 733.59, sent notice to the City requesting "an injunction to enjoin abuses of corporate power; specific performance regarding express rights and public duties stated in the [Lease and the Agreement]; and a writ of mandamus to compel the City officials to perform their duties and obligations" under the Lease and the Agreement.
{¶ 11} On May 1, 2015, the City responded and refused to pursue a taxpayer suit as Plaintiffs requested. On May 28, 2015, Plaintiffs, acting on behalf of the City, filed this lawsuit, and on August 5, 2015, Plaintiffs filed an amended complaint alleging 18 causes of action. Plaintiffs generally allege that Defendants' actions violate the Lease and the Agreement's "express and implied terms to manage and operate Lakewood Hospital through 2026 * * *" and return the property to the City at that time. Defendants filed multiple motions to dismiss, arguing that Plaintiffs' claims should be dismissed for failure to state a claim upon which relief can be granted under Civ.R. 12(B)(6), lack of standing, failure to plead fraud with specificity under Civ.R. 9, mootness, and lack of subject matter jurisdiction under Civ.R. 12(B)(1).
{¶ 12} A summary of the time line in this case, which will be explained in detail throughout the remainder of this opinion, follows.
{¶ 13} On May 28, 2015, Plaintiffs filed their complaint. On December 21, 2015, the City passed an ordinance and entered into an agreement with CCF and LHA to close Lakewood Hospital. On February 6, 2016, Lakewood Hospital was closed. In September and October 2016, parts of Lakewood Hospital were demolished. On November 23, 2016, the City voters ratified the December 21, 2015 ordinance. In April 2017, construction began on the FHC.
{¶ 14} On July 11, 2017, the court, in a 38-page decision, granted Defendants' motions and dismissed Plaintiffs' complaint in its entirety. It is from this order that Plaintiffs appeal.
III. Motion to Partially Dismiss Appeal
{¶ 15} Before reviewing Plaintiffs' arguments, we address Defendants' motions to partially dismiss this appeal. Defendants argue that Plaintiffs' first three causes of action, each styled "Taxpayers Suit," along with their claims for injunctive relief and mandamus, are moot. To support this argument, Defendants attach various affidavits to their motion to partially dismiss. This court has held that
[n]ormally, an appellate court can only consider what is in the record on appeal. When it comes to deciding whether an event has caused an issue to be moot, *51 however, it may 'be proved by extrinsic evidence outside the record.' State ex rel. Cincinnati Enquirer, Div. of Gannett Satellite Info. Network, Inc. v. Dupuis , 98 Ohio St.3d 126, 2002-Ohio-7041, 781 N.E.2d 163, ¶ 8.
Gajewski v. Bd. of Zoning Appeals , 8th Dist. Cuyahoga No. 91101, 2008-Ohio-5270, 2008 WL 4519190, ¶ 14.
{¶ 16} Defendants argue that Plaintiffs' appeal, as it relates to counts 1A, 1B, 1C, 7, and 8, which seek an injunction, specific performance, and a writ of mandamus, should be dismissed, because it is impossible for this court to grant the relief requested. Defendants further argue that Plaintiffs "never attempted to enjoin the demolition of Lakewood Hospital's [parking] garage and professional office building or the commencement of construction of the Family Health Center further rendering their claims moot."
{¶ 17} Plaintiffs, on the other hand, argue that this case is not about stopping the demolition of a parking garage or the construction of a family health center. Rather, according to Plaintiffs, this case is about stopping "the abuse of corporate powers by elected officials regarding express contract terms to operate, manage, and then return in 2026 the City-owned Lakewood Hospital * * * to the citizens of the City of Lakewood." In the alternative, Plaintiffs argue that even if this case involves a "construction matter," Lakewood Hospital "is admittedly still in existence" and could be used as a hospital again. According to Plaintiffs, the "remedy of monetary relief still exists to hold [Defendants] accountable for their breaches and to allow for the reopening of an inpatient medical care facility on the city-owned land and building comprising the Hospital."
{¶ 18} Upon review, we deny Defendants' motion to partially dismiss this appeal. In the interest of justice, we consider the parties' arguments on the merits.
IV. Claim 1A-Taxpayer Suit under R.C. 733.59
{¶ 19} A plaintiff who ordinarily may not have standing concerning a City's "abuse of corporate powers" may seek equitable remedies as a taxpayer under R.C. 733.56 - 733.59. "A taxpayer action is properly brought only when the right under review in the action is one benefitting the public." State ex rel. Fisher v. Cleveland , 109 Ohio St.3d 33, 2006-Ohio-1827, 845 N.E.2d 500, ¶ 10. Taxpayers must first request that the City's law director take action, and if this is unsuccessful, "the taxpayer may institute suit in his own name, on behalf of the municipal corporation." R.C. 733.59. Plaintiffs must allege "abuse of corporate powers" by the political subdivision, including, 1.) unlawful exercise of powers and, 2.) assumption of powers not conferred. See Elyria Gas & Water Co. v. Elyria , 57 Ohio St. 374, 49 N.E. 335 (1898).
{¶ 20} Taxpayers may seek equitable relief under R.C. 733.59, limited to the following forms: 1.) pursuant to R.C. 733.56, "an order of injunction to restrain * * * the abuse of [municipal] corporate powers, or the execution or performance of any contract made [o]n behalf of the municipal corporation in contravention of the laws or ordinance[s] governing it, or which was procured by fraud or corruption"; 2.) pursuant to R.C. 733.57, "the specific performance [of] an obligation or contract made on behalf of a municipal corporation"; and 3.) pursuant to R.C. 733.58, "a writ of mandamus to compel the performance of [a] duty * * * expressly enjoined by law or ordinance."
{¶ 21} In this case, it is undisputed that Plaintiffs made a written demand to the City's law director requesting that the City file suit under R.C. 733.56, 733.57, and *52 733.58. This demand was unsuccessful, and Plaintiffs filed the instant action, requesting the following relief: 1.) "a temporary and permanent injunction to enjoin the abuses of corporate powers by the City and prohibit the execution or performance of any resolution or contract in contravention of the existing" Agreement and Lease; 2.) specific performance of the Lease and the Agreement; and 3.) writ of mandamus compelling the City to operate under the Lease and the Agreement.
{¶ 22} The trial court dismissed the taxpayer claims for the following reasons: The statutory taxpayer claims for an injunction and a writ of mandamus were dismissed for failure to state a claim upon which relief can be granted under Civ.R. 12(B)(6) ; and the statutory taxpayer claim for specific performance was dismissed for lack of subject matter jurisdiction based on mootness under Civ.R. 12(B)(1). We first address whether the court retained subject matter jurisdiction over the taxpayer claims based on mootness, because we find this dispositive.
A. Lack of Subject Matter Jurisdiction and Mootness
{¶ 23} Courts of common pleas' jurisdiction is limited to "justiciable matters." Morrison v. Steiner , 32 Ohio St.2d 86, 290 N.E.2d 841 (1972). "If what were once justiciable matters have been resolved to the point where they become moot, the courts of common pleas no longer have subject matter jurisdiction to hear the case." Hirsch v. TRW, Inc. , 8th Dist. Cuyahoga No. 83204, 2004-Ohio-1125, 2004 WL 444552, ¶ 11. "The lack of subject-matter jurisdiction is not a waivable defense and may be raised for the first time on appeal." In re Claim of King , 62 Ohio St.2d 87, 89, 403 N.E.2d 200 (1980). Where mootness is concerned, "an actual controversy must exist at stages of appellate or certiorari review, and not simply at the date the action is initiated," unless the issue is "capable of repetition, yet evading review." Roe v. Wade , 410 U.S. 113, 125, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973).
{¶ 24} "One commentator has defined mootness as 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).' " United States Parole Comm. v. Geraghty , 445 U.S. 388, 398, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980), quoting Monaghan, Constitutional Adjudication: The Who and When , 82 Yale L. J. 1363, 1384 (1973).
{¶ 25} In the case at hand, on December 21, 2015, the City passed Ordinance 49-15, which authorized the City to enter into the Master Agreement with CCF and LHA. The same day, the parties entered into the Master Agreement, in which the City and LHA sold certain Lakewood Hospital assets, including real property, to CCF, with proceeds paid to the City. The Master Agreement also provided that ownership of other Lakewood Hospital property "revert back" to the City. Furthermore, according to Defendants, the Master Agreement "terminated the Agreement, significantly modified the Lease, and included a mutual waiver of all claims arising from the Agreement, the Lease, and the operation and management of Lakewood Hospital * * *."
{¶ 26} Per the terms of the Master Agreement, Lakewood hospital was closed on February 6, 2016. Additionally, the parties agreed that CCF would construct the new $34,000,000 FHC in its place. In September and October 2016, CCF demolished Lakewood Hospital's *53 parking garage and professional office building. In April 2017, CCF began construction of the FHC at the site where Lakewood Hospital's parking garage and professional office building used to stand.
{¶ 27} On November 23, 2016, the City's voters passed Issue 64, which ratified Ordinance 49-15. The City's voters also adopted the Third Amended Charter for the City, which "eliminates all references to Lakewood Hospital and the City owning, leasing, or operating a hospital."
{¶ 28} In dismissing Plaintiffs' taxpayer claims, the court found that, subsequent to the filing of this suit, the parties agreed to 1.) terminate the Agreement; 2.) amend/modify the Lease and eventually terminate the Lease when the FHC is complete; and 3.) waive and release any claims the City may have against CCF and LHA under the Lease and the Agreement. The court concluded that "[t]he release and waiver of claims, combined with the amendment and imminent termination of the [L]ease and the [A]greement, have made the Plaintiffs' taxpayers claims-which, it is worth repeating, are really Lakewood's claims-moot and there is no case or controversy for me to decide."
B. Statutory Taxpayer Claim for Specific Performance
{¶ 29} The extraordinary remedy of specific performance may be awarded for breach of contract when the following conditions have been met:
The contract must be concluded, certain, unambiguous, mutual, and based upon a valuable consideration; it must be perfectly fair in all its parts; it must be free from any misrepresentation or misapprehension, fraud or mistake, imposition or surprise; it cannot be an unconscionable or hard bargain; its performance must not be oppressive upon the defendant; and finally, it must be capable of specific execution through a decree of the court.
Hotel Burnet Co. v. Union Cent. Life Ins. Co. , 72 Ohio App. 453, 458, 52 N.E.2d 754 (1st. Dist.1943) (citing 4 Pomeroy's Equity Jurisprudence 1040, Section 1404 (5th Ed.) ).
{¶ 30} In the case at hand, Plaintiffs seek specific performance of the Lease through the conclusion of its term in 2026. However, the parties to the Lease agreed to amend, modify, and eventually terminate the Lease by entering into the Master Agreement. City council enacted an ordinance to authorize this and the voters ratified it by passing Issue 64. Therefore, the Lease is no longer "capable of specific execution."
[T]he contracts of a municipal corporation * * * are governed by the same principles as apply to contracts between individuals. As between the latter, parties competent to contract are competent to modify or to abrogate the contracts, so far as executory, between them made, the consideration therefor being found in the mutual waivers of rights thereunder.
Phelps v. Logan Natural Gas & Fuel Co. , 101 Ohio St. 144, 148, 128 N.E. 58 (1920). Furthermore, Ohio courts have held that "in the exercise of its plenary power, the General Assembly may enact remedial and retrospective legislation to cure and render valid that which it could have authorized in the first instance." Washington Cty. Taxpayers Assn. v. Peppel , 78 Ohio App.3d 146, 156, 604 N.E.2d 181 (4th Dist.1992).
{¶ 31} Accordingly, we find that the statutory taxpayer claim for specific performance is moot.
C. Statutory Taxpayer Claim for an Injunction
{¶ 32} An injunction is a preventative remedy "usually employed to prevent future injury, * * * to restrain motion and to enforce inaction * * *."
*54 Fischer v. Damm , 36 Ohio App. 515, 520-521, 173 N.E. 449 (8th Dist.1930).
{¶ 33} "To state a claim for injunctive relief, a litigant must show that (1) it is likely to succeed on the merits of the case, (2) the issuance of the injunction will prevent irreparable harm, (3) the potential injury that may be suffered [if the injunction is granted] will not outweigh the potential injury suffered * * * if the injunction is not granted, and (4) the public interest will be served by the granting of the injunction." Cleveland v. Cleveland Elec. Illuminating Co. , 115 Ohio App.3d 1, 684 N.E.2d 343 (8th Dist.1996).
{¶ 34} Although somewhat unclear from Plaintiffs' 150-page amended complaint, it appears that they are trying to "enjoin the abuses of corporate powers by the City and prohibit the execution or performance of" the Master Agreement, on the grounds that it is "in contravention of" the Agreement and the Lease.
{¶ 35} The trial court found that Plaintiffs failed to allege a claim "for an injunction to restrain the abuse of Lakewood's corporate powers." Rather, the court found that the allegations against the City fell "within the wide range of discretionary lawful conduct conferred on the mayor by virtue of his position as the City's executive." The trial court further found that Plaintiffs failed to allege a claim "for an injunction to restrain the execution or performance of any contract made on behalf of Lakewood in contravention of its laws and ordinances." Rather, the court found that Plaintiffs sought to restrain the City from performing under a contract (the Master Agreement) that essentially supersedes two previous contracts (the Lease and the Agreement). The court concluded that "[t]here is no provision allowing a taxpayer to seek to restrain the performance or execution by the City of one contract on the basis that to do so would violate a different contract."
{¶ 36} Regardless of the court's reasoning behind dismissing Plaintiffs' statutory taxpayer claim for an injunction, upon review, this court finds that the issue is moot. City council has passed, and the voters have approved, the parties entering into the Master Agreement. The City cannot now enjoin what the voters have approved. See Skindell v. Madigan, 8th Dist. Cuyahoga No. 103976, 2017-Ohio-398, 2017 WL 448940 (dismissing as moot appeal challenging the adoption of Lakewood Codified Ordinance 49-15, which approved the closing of Lakewood Hospital, because the voters of Lakewood approved the ordinance by way of referendum). Compare Garverick v. Hoffman , 23 Ohio St.2d 74, 81, 262 N.E.2d 695 (1970) ("the adoption by the City council of an ordinance accepting annexation renders moot a case seeking to enjoin annexation").
D. Statutory Taxpayer Claim for a Writ of Mandamus
{¶ 37} Plaintiffs' amended complaint requests a "writ of mandamus to compel the City to perform [its] official duties" under the City's charter and ordinances to "ensure the preservation and operation of Lakewood Hospital" per the terms of the Lease and conditions of the Agreement.
{¶ 38} The Ohio Supreme Court has held that "to be entitled to a writ of mandamus, relator must show (1) that he has a clear legal right to the relief prayed for, (2) that respondents are under a clear legal duty to perform the acts, and (3) that relator has no plain and adequate remedy in the course of ordinary law." State ex rel. Harris v. Rhodes , 54 Ohio St.2d 41, 42, 374 N.E.2d 641 (1978).
{¶ 39} As to the first prong, the "relief prayed for" is to compel the City to perform its official duties concerning Lakewood *55 Hospital. Although unclear from Plaintiffs' 150-page amended complaint, the trial court concluded that, in essence, Plaintiffs' aim was to compel the enforcement of the Lease and the Agreement.
{¶ 40} As to the second prong, the issue is whether the City has a "clear legal duty" to enforce the Lease and the Agreement. The City is not a party to the Agreement; therefore, we find that the City has no duty to enforce it. The City is, however, a party to the Lease. A basic tenant of contract law is that a party to a contract has a duty to perform under that contract. "Accompanying every contract is a common-law duty to perform * * * the thing agreed to be done * * *." 38 American Jurisprudence, Section 20, at 662 (1936). However, a basic defense to failure to perform under a contract is the doctrine of accord and satisfaction. "An accord and satisfaction is a method of discharging a contract by substituting another contract or agreement, the execution of which satisfies the original duty. Four elements must be present to an accord and satisfaction: proper subject matter, competent parties, mutual assent and consideration." Warner Storage, Inc. v. Systemation, Inc., 64 Ohio App.3d 1, 4, 580 N.E.2d 490 (8th Dist.1989).
{¶ 41} As to the third prong, Plaintiffs must show that they have no other plain and adequate remedy at law. Interestingly, to succeed on this claim, Plaintiffs would necessarily have to fail on all other nonequitable causes of action they set forth in their amended complaint.
{¶ 42} For the same reasons noted in parts IV(B) and (C) of this opinion, we find that Plaintiffs' claim for a writ of mandamus is moot.
E. Taxpayer suit under the Lakewood Charter
{¶ 43} According to Plaintiffs, the Second Amended Charter of Lakewood, Article VII, Sections 1(D) through 1(G), sets forth the procedure for taxpayer actions. These procedures and requirements are substantially similar, if not identical, to the procedures and requirements set forth in R.C. Chapter 733. Furthermore, the allegations in Plaintiffs' claim 1B are identical to the allegations in Plaintiffs' claim 1A.
{¶ 44} The trial court stated that "the same analysis applies and a separate discussion is not needed." We agree, and find that the trial court properly dismissed this count.
F. Taxpayer Suit under Common Law
{¶ 45} In this claim, Plaintiffs allege the same facts as in claims 1A and 1B, and they request the same relief-an injunction, specific performance, and a writ of mandamus. However, they seek this relief "[p]ursuant to the common law of the State of Ohio." The Ohio Supreme Court has held that "where statutory relief is afforded and clearly applies to the circumstances giving rise to the action, the statute constitutes the exclusive avenue for seeking redress." Westbrook v. Prudential Ins. Co. , 37 Ohio St.3d 166, 170, 524 N.E.2d 485 (1988).
{¶ 46} Accordingly, the trial court properly granted Defendants' motion to dismiss this count.
V. Standard of Review- Civ.R. 12(B)(6) Motion to Dismiss
{¶ 47} An appellate court's standard of review on a Civ.R. 12(B)(6) motion to dismiss is as follows:
Our standard of review on a Civ.R. 12(B)(6) motion to dismiss is de novo. A motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests the sufficiency of *56 the complaint. Under a de novo analysis, we must accept all factual allegations of the complaint as true and all reasonable inferences must be drawn in favor of the nonmoving party.
(Citations omitted.) NorthPoint Props v. Petticord , 179 Ohio App.3d 342, 2008-Ohio-5996, 901 N.E.2d 869, ¶ 11 (8th Dist.). For a trial court to grant a motion to dismiss for failure to state a claim upon which relief can be granted, it must appear "beyond doubt from the complaint that the plaintiff can prove no set of facts entitling her to relief." Grey v. Walgreen Co. , 197 Ohio App.3d 418, 2011-Ohio-6167, 967 N.E.2d 1249, ¶ 3 (8th Dist.).
{¶ 48} Particular to this case, however, we note that under Civ.R. 12(B)(6), the court does not have to accept Plaintiffs' legal conclusions as true. Ashcroft v. Iqbal , 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").
{¶ 49} For example, in paragraph 16 of Plaintiffs' amended complaint, it states the following: "The intended beneficiaries of the Lease are City Taxpayers and residents and Lakewood Hospital employees." This is a legal conclusion that may or may not be supported by the facts of this case. We do not have to accept this as true for the purpose of analysis under Civ.R. 12(B)(6).
{¶ 50} The trial court dismissed claims 2, 4, 5, 10, 11, and 14 for failure to state a claim upon which relief can be granted.
A. Claim 2-Breach of Contract as Intended Third-party Beneficiary
{¶ 51} In the case at hand, Plaintiffs argue that they are intended third-party beneficiaries of the Lease and the Agreement because of various provisions in these two documents stating that Lakewood Hospital serves to benefit and provide healthcare for Lakewood residents and the general public.
{¶ 52} "[P]rivate citizens have no right to enforce government contracts on their own behalf, unless a different intention is 'clearly manifested' in the contract." Duncan v. Cuyahoga Community College , 8th Dist. Cuyahoga No. 101644, 2015-Ohio-687, 29 N.E.3d 289, ¶ 32. Ohio law differentiates an "intended" third-party beneficiary from an "incidental" third-party beneficiary. "If the promisee has no intent to benefit a third party, then any third-party beneficiary to the contract is merely an 'incidental beneficiary' who has no enforceable rights under the contract." Hill v. Sonitrol of Southwestern Ohio, Inc., 36 Ohio St.3d 36, 40, 521 N.E.2d 780 (1988) (citing Norfolk & W. Co. v. United States , 641 F.2d 1201, 1208 (6th Cir.1980).
{¶ 53} Furthermore, the Ohio Supreme Court has held that "[g]enerally, the parties' intention to benefit a third party will be found in the language of the agreement." Huff v. FirstEnergy Corp. , 130 Ohio St.3d 196, 2011-Ohio-5083, 957 N.E.2d 3, ¶ 12. When the terms of a contract are unambiguous, courts look to the plain meaning of the language and apply it as a matter of law. State ex rel. Parsons v. Fleming , 68 Ohio St.3d 509, 511, 628 N.E.2d 1377 (1994).
{¶ 54} Our review of the Lease and the Agreement shows no express intent to benefit Plaintiffs. The stated purpose of Lakewood Hospital, as evidenced by the Lease and the Agreement, is to provide medical services to "residents of the City and all members of the general public." As the trial court noted, this can "likely be said for any other hospital in the United *57 States and * * * does not reveal an intent to make the general public-much less Lakewood taxpayers alone-beneficiaries of the lease with legally enforceable rights under it."
{¶ 55} Upon review, we find that Plaintiffs have failed to state a claim upon which relief can be granted as intended third-party beneficiaries of the Lease and the Agreement. A plain reading of these contracts shows that the parties did not intend Plaintiffs to be beneficiaries of the agreements beyond the incidental benefit of medical service they may-or may not-receive from Lakewood Hospital. Compare Jackson v. Cleveland Clinic Found. , N.D.Ohio No. 1:11 CV 1334, 2011 WL 4007732, 2011 U.S. Dist. LEXIS 101768 (Sept. 9, 2011) (dismissing Cleveland and Mayor Frank Jackson's breach of contract claim against CCF under Fed.R.Civ.P. 12(b)(6) for the closure of Huron Hospital and rejecting the argument that accepting state funding "requires the Cleveland Clinic to continue to provide for the fair and equitable deliver[y] of essential medical services to the citizens of * * * Cleveland").
B. Claim 4-Breach of Express Trust
{¶ 56} The Ohio Supreme Court held the following in Miller v. Stokely , 5 Ohio St.194, 1855 WL 62, 1855 Ohio LEXIS 132 (1855), at paragraphs one and two of the syllabus:
To establish an express trust * * *, it is requisite that the evidence should be clear, certain and conclusive, in proof not only of the existence of the trust, and that, too, at the time of the conveyance, but also as to its terms and conditions.
It is not sufficient that circumstances should be in proof calculated to excite a suspicion, or even a probability, in the minds of some persons, that there might have been a trust; but the proof must show the existence of the trust affirmatively, and so conclusively as to remove all reasonable and well-founded doubt.
{¶ 57} Plaintiffs argue that LHA was holding Lakewood Hospital in trust for the benefit of Lakewood taxpayers and residents, as well as the public, and that LHA is a "trustee" rather than a "lessee." However, there is simply no evidence in the amended complaint or any of its attachments to support this argument. In fact, the plain language of the documents at issue refers to a "lease" and identifies LHA as a "lessee." Plaintiff offers nothing more than legal conclusions that an express trust exists, and as noted previously, we are not required to accept these conclusions as true. Accordingly, Plaintiff fails to state a claim for breach of an express trust upon which relief can be granted.
C. Claim 5-Breach of Constructive Trust
{¶ 58} A constructive trust is a remedy, not a cause of action. "A constructive trust is, in the main, an appropriate remedy against unjust enrichment. This type of trust is usually invoked when property has been acquired by fraud" or the acquisition of property "is against the principles of equity." Ferguson v. Owens , 9 Ohio St.3d 223, 226, 459 N.E.2d 1293 (1984). Accordingly, there can be no "claim" for breach of a constructive trust, and the trial court properly dismissed this claim under Civ.R. 12(B)(6).
D. Claim 10-Unjust Enrichment
{¶ 59} Plaintiffs allege that the City conferred a benefit on CCF and LHA, and it is unjust for CCF and LHA to retain this benefit. "[A]n equitable action for unjust enrichment cannot exist where there is a valid and enforceable written *58 contract." Kwikcolor Sand v. Fairmount Minerals Ltd. , 8th Dist. Cuyahoga No. 96717, 2011-Ohio-6646, 2011 WL 6775580, ¶ 14.
{¶ 60} In this case, there are two valid and enforceable written contracts: the Lease and the Agreement. In fact, the gist of Plaintiffs' case is that the City abused its power by breaching the Lease and the Agreement. Plaintiffs fail to allege that these two contracts are invalid or unenforceable, which would be the scenario giving rise to a claim for unjust enrichment. Accordingly, this claim was properly dismissed for failure to state a claim upon which relief can be granted under Civ.R. 12(B)(6).
E. Claim 11-Promissory Estoppel
{¶ 61} Plaintiffs allege promissory estoppel against LHA and CCF only and request relief by standing in the shoes of the City as taxpayers. "[T]he existence of an enforceable contract between the parties bars recovery under a promissory estoppel claim." Americana Inv. Co. v. Natl. Contr. & Fixturing, L.L.C. , 10th Dist. Franklin No. 15AP-1010, 2016-Ohio-7067, 2016 WL 5627714, ¶ 13. Similar to our analysis of unjust enrichment, this claim was properly dismissed for failure to state a claim upon which relief can be granted under Civ.R. 12(B)(6).
F. Claim 14-Alter Ego Liability (Piercing the Corporate Veil)
{¶ 62} Piercing the corporate veil or alter ego liability is a remedy, not an independent cause of action. Geier v. Natl. GG Indus. , 11th Dist. Lake No. 98-L-172, 1999 WL 1313640, 1999 Ohio App. LEXIS 6263 (Dec. 23, 1999). Accordingly, there can be no "claim" for alter ego liability, and the trial court properly dismissed this allegation under Civ.R. 12(B)(6).
VI. Standard of Review-Dismissal for Lack of Standing
{¶ 63} "Whether a party has established standing to bring an action before the court is a question of law," which is reviewed de novo. Moore v. Middletown , 133 Ohio St.3d 55, 2012-Ohio-3897, 975 N.E.2d 977, ¶ 21. To have standing to file suit, a plaintiff must show that he or she "suffered (1) an injury that is (2) fairly traceable to the defendant's allegedly unlawful conduct, and (3) likely to be redressed by the requested relief." Id. at ¶ 22.
{¶ 64} In general, standing to enforce a public right as a taxpayer is conferred through R.C. Chapter 733. In State ex rel. White v. Cleveland , 34 Ohio St.2d 37, 40, 295 N.E.2d 665 (1973), the Ohio Supreme Court held that when Plaintiffs "have enforced a right of action on behalf of and for the benefit of the general public * * * [t]his action is properly categorized as a 'taxpayer's action' " pursuant to R.C. 733.59.
{¶ 65} Outside of this statutory scheme, a taxpayer may have standing to sue a branch of the government based on two legal theories: "First, he has standing if he is in a particular class of people, more narrow than the class of taxpayers generally, that has contributed the funds of out which the expenditures are made." Brinkman v. Miami Univ. , 139 Ohio Misc.2d 114, 2005-Ohio-7161, 861 N.E.2d 925, ¶ 24 (C.P.). See also State ex rel. Masterson v. State Racing Comm. , 162 Ohio St. 366, 368, 123 N.E.2d 1 (1954) (finding that the plaintiff lacked standing to sue because he had not paid any of the "special taxes" that made up the State Racing Commission Fund).
{¶ 66} Second, a person "has standing as a general taxpayer if he has suffered some individual injury-if he can *59 'allege and prove damage to [himself] different in character from that sustained by the public generally.' " Brinkman at ¶ 24 (quoting Masterson ). As will be explained in the following sections of this opinion, Plaintiffs made no allegations that they paid "special taxes" or suffered unique individual injuries concerning the closing of Lakewood Hospital. Therefore, they have no standing to sue as taxpayers outside of the realm of R.C. Chapter 733 et seq.
{¶ 67} The trial court dismissed claims 3, 12A, 12B, 13, and 15 for lack of standing.
A. Claim 3-Breach of Fiduciary Duty
{¶ 68} Plaintiffs argue that the City owes the taxpayers a fiduciary duty to act in their best interest and, in this case, the City breached that duty by closing Lakewood Hospital.
{¶ 69} "To maintain a claim of breach of fiduciary duty, the plaintiff must prove (1) the existence of a duty arising from a fiduciary relationship; (2) a failure to observe the duty; and (3) an injury resulting proximately therefrom." Harwood v. Pappas & Assocs. , 8th Dist. Cuyahoga No. 84761, 2005-Ohio-2442, 2005 WL 1177877, ¶ 26.
{¶ 70} "[P]rivate citizens may not restrain official acts when they fail to allege and prove damage to themselves different in character from that sustained by the public generally." Masterson at 368, 123 N.E.2d 1.
{¶ 71} Under this cause of action, Plaintiffs fail to allege that they are in a class of "special" taxpayers, and they fail to allege an injury unique to themselves; therefore, they do not have standing to sue for breach of fiduciary duty-outside of the aforementioned statutory taxpayers suit-and this claim was properly dismissed.
B. Claims 12A and 12B-Fraud
{¶ 72} Plaintiffs allege in Claim 12A that CCF made certain misrepresentations to LHA and the City regarding the Lease and the Agreement with the intent of misleading the City to rely on them. Plaintiffs allege in Claim 12B that all Defendants knew they were going to "cripple" then close Lakewood Hospital.
{¶ 73} The elements of fraud are: (a) a misrepresentation or concealment of fact; (b) that is material to the transaction at hand; (c) made falsely, with knowledge of its falsity or with utter disregard and recklessness as to whether it is false; (d) with the intent of misleading another into relying upon it; (e) justifiable reliance upon the misrepresentation or concealment; and (f) resulting injury proximately caused by the reliance. Cohen v. Lamko, Inc. , 10 Ohio St.3d 167, 169, 462 N.E.2d 407 (1984).
{¶ 74} Plaintiffs allegations are that Defendants committed fraud against the City; therefore, Plaintiffs must necessarily stand in the City's shoes to bring this claim. However, this is not one of the causes of action contemplated by R.C. Chapter 733, Plaintiffs fail to allege that they are in a class of "special" taxpayers, and they fail to allege an injury unique to themselves. Furthermore, Plaintiffs fail to allege how they (as opposed to the City) were misled or harmed or how they relied on Defendants' misrepresentations. Therefore, they do not have standing to sue Defendants for fraud allegedly committed upon the City.
C. Claim 13-Conspiracy
{¶ 75} Plaintiffs allege that Defendants engaged in a conspiracy by accepting CCF's proposal, which recommended closing Lakewood Hospital, and rejecting MetroHealth's proposal.
*60 {¶ 76} The elements of a civil conspiracy are: "1) a malicious combination; 2) two or more persons; 3) injury to person or property; [and] 4) existence of an unlawful act independent from the actual conspiracy." Scanlon v. Gordon F. Stofer & Bro. Co. , 8th Dist. Cuyahoga Nos. 55467 and 55472, 1989 WL 69400, 1989 Ohio App. LEXIS 2528 (June 22, 1989).
Conspiracy, in and of itself, furnishes no cause of civil action. The gist of the civil action for conspiracy is the damage caused by acts committed pursuant to a formed conspiracy, rather than the conspiracy itself; and unless something is actually done by one or more of the conspirators which proximately results in damage, no civil action lies against anyone.
10 Ohio Jurisprudence 2d 60, Conspiracy, Section 3. Plaintiffs attempt to "stand in" for the Defendants and allege no damages unique to themselves. The trial court properly dismissed this claim for lack of standing.
D. Claim 15-Tortious Interference
{¶ 77} Plaintiffs allege that CCF tortiously interfered with the Lease. The elements of tortious interference with a contract are: "(1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) the lack of justification, and (5) resulting damages." Fred Siegel Co., L.P.A. v. Arter & Hadden , 85 Ohio St.3d 171, 176, 707 N.E.2d 853 (1999).
{¶ 78} "Only a party to a contract or an intended third-party beneficiary of a contract may bring an action on a contract in Ohio." Thornton v. Windsor House, 57 Ohio St.3d 158, 161, 566 N.E.2d 1220 (1991). Plaintiffs attempt to "stand in" for the Defendants here and allege no damages unique to themselves. The trial court properly dismissed this claim for lack of standing.
VII. App.R. 12(A)(2) and 16(A)(7)
{¶ 79} Plaintiffs have not appealed the court's dismissal of claims 6, 7, 8, 9. Therefore, we need not address these claims on appeal. See App.R. 12(A)(2) and 12(A)(7).
VIII. Leave to File Second Amended Complaint
{¶ 80} Plaintiffs' final assigned error in this case concerns the court's denial of their motion for leave to file a second amended complaint. Pursuant to Civ.R. 15(A), Plaintiffs in this case needed either Defendants' written consent or leave of court to file a second amended complaint. "The court shall freely give leave when justice so requires." Id. We review a trial court's decision to deny or grant a motion for leave to file an amended complaint for an abuse of discretion. Wilmington Steel Prods., Inc. v. Cleveland Elec. Illum. Co. , 60 Ohio St.3d 120, 122, 573 N.E.2d 622 (1991).
{¶ 81} Plaintiffs requested leave on April 1, 2016, to amend their complaint to add "newly discovered facts from a recently obtained third-party affidavit and ongoing discovery * * *." The new facts Plaintiff alleged are the Defendants council's enacting ordinance 49-15 and the approval of the Master Agreement. All of the facts surrounding these events, as well as the voters' November 2016 ratification of the ordinance, were placed into record and taken into consideration by the trial court regarding the motions to dismiss and the doctrine of mootness.
{¶ 82} Plaintiffs also purported to allege "new causes of action" in their second amended complaint labeled counts 16 through 22. However, a review of Plaintiffs' proposed second amended complaint quickly reveals that no new causes of action *61 were set forth. Rather, Plaintiffs added the "new" facts noted above to their causes of action for taxpayers lawsuit; breach of contract; breach of fiduciary duty; tortious interference; breach of express trust; unjust enrichment; and fraud.
{¶ 83} Accordingly, because Plaintiff did not allege any additional facts not already in the record, nor did they allege any new causes of action, we find that the court did not abuse its discretion by denying their motion for leave to file a second amended complaint.
IX. Conclusion
{¶ 84} In conclusion, while Plaintiffs have standing to sue as taxpayers under the statutory scheme, their claims were rendered moot by a series of events culminating in the majority of the Defendants' residents voting in favor of closing Lakewood Hospital. This deprives the court of subject matter jurisdiction to hear these claims. We wish to note that prior to the Defendants, CCF, and LHA entering into the Master Agreement, prior to the City council enacting the ordinance, and prior to the voters ratifying the ordinance, Plaintiffs' taxpayer claims may have survived a motion to dismiss. However, this is an issue for another day.
It has been long and well established that it is the duty of every judicial tribunal to decide actual controversies between parties legitimately affected by specific facts and to render judgments which can be carried into effect. It has become settled judicial responsibility for courts to refrain from giving opinions on abstract propositions and to avoid the imposition by judgment of premature declarations or advice on potential controversies.
Fortner v. Thomas , 22 Ohio St.2d 13, 14, 257 N.E.2d 371 (1970).
{¶ 85} Additionally, Plaintiffs lack standing to bring the claims alleging rights other than as taxpayers, and they failed to state various claims upon which relief can be granted. While dismissing a complaint at the pleading stage of the proceedings may appear severe, this court, as well as the trial court, is bound by the letter of the law. Lack of standing and mootness are more than pleading deficiencies; rather, they are legal doctrines that prohibit resolution of this case on its merits. Accordingly, all of Plaintiffs' assigned errors are overruled.
{¶ 86} Judgment affirmed.
MARY J. BOYLE, P.J., and ANITA LASTER MAYS, J., CONCUR
APPENDIX
Assignments of Error
I. The trial court erred as a matter of law by dismissing Relators' statutory taxpayers law suit claims under Counts 1A, 1B, and 1C.
II. The trial court erred as a matter of law by dismissing Plaintiffs' breach of contracts claims under Count 2.
III. The trial court erred as a matter of law by dismissing Plaintiffs' breach of fiduciary duty claims under Count 3.
IV. The trial court erred as a matter of law by dismissing Plaintiffs' express and constructive charitable trust claims under Counts 4 and 5.
V. The trial court erred as a matter of law by dismissing Plaintiffs' unjust enrichment claim under Count 10.
VI. The trial court erred as a matter of law by dismissing Counts 11, 12A, 12B, 13, and 15 for alleged lack of standing.
VII. The trial court erred as a matter of law by dismissing Plaintiffs' alternative claim of CCF's alter ego under Count 14.
*62 VIII. The trial court abused its discretion by not allowing Relators to file a second amended complaint pursuant to Civ.R. 15.

See appendix