[Cite as *Mobley v. Klimas*, 2024-Ohio-2167.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

|  |  |  |
|---|---|---|
| MICHAEL MOBLEY, ET AL., | : | |
| Plaintiffs-Appellants, | : | No. 113032 |
| v. | : | |
| NERIS KLIMAS, ET AL., | : | |
| Defendants-Appellees. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 6, 2024

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-22-972494

### *Appearances:*

Cavitch, Familo & Durkin, Co. LPA and Bradley Hull, IV,
*for appellants.*

FRANTZ WARD LLP, Cynthia A. Lammert, and Mark L.
Rodio, *for appellees.*

LISA B. FORBES, P.J.:

{¶ 1} Michael and Annierose Mobley (the "Mobleys") appeal from the trial court's journal entry granting Neris Klimas ("Klimas") and the Murwood Real Estate Group, L.L.C., dba Keller Williams Greater Metropolitan's (collectively, "KW")

motion for judgment on the pleadings. After reviewing the facts of the case and pertinent law, we affirm the lower court's judgment.

## I. Facts and Procedural History

{¶ 2} On December 13, 2022, the Mobleys filed a complaint against KW regarding real property located at 17606 Schenely Avenue in Cleveland (the "Property") that the Mobleys purchased in 2016. The complaint alleged that KW "possessed information about the consistency and severity of the continuous water-sewer back up issues * * * [and] failed to share this information with [the Mobleys] at any relevant time." Specifically, the complaint alleged causes of action for breach of contract, fraud, professional negligence, and breach of fiduciary duty. All causes of action are based on the Mobleys' allegation that KW failed to disclose the water issues to the Mobleys.

### A. The Complaint

{¶ 3} The following relevant factual averments are taken from the complaint in the case at hand.

{¶ 4} The Mobleys retained Klimas, who is a real estate agent for KW, to represent them in purchasing the Property. On October 26, 2016, Klimas and KW "came into possession of information and documentation from the [s]eller, Ronald James ("James"), that was adverse to the position of the Mobleys in the transaction, that * * * Klimas and [KW] then failed to provide to the Mobleys at any relevant time * * *." This "information" was that "the house at 17606 Schenely Avenue, during

*** James' ownership thereof, had suffered water intrusion into the basement ***."

{¶ 5} The Mobleys specifically allege that Klimas and KW failed to share this information with them "prior to their entering into the * * * agreement [with Klimas and KW to represent them], the purchase agreement, or the ultimate title transfer on December 21, 2016."

{¶ 6} The Property "suffered two (2) major water intrusion events within twelve months after closing * * *."

{¶ 7} The Mobleys filed a complaint against James and "their home inspector," alleging fraud, breach of contract, and unjust enrichment in Cuyahoga C.P. No. CV-17-890671. "The litigation was ultimately resolved by the voluntary dismissal of the [c]omplaint against [the home inspector] and by the granting of summary judgment (see exhibit No. 3) (upheld on appeal in 8th Dist. Cuyahoga No. 108470) in favor of * * * James * * *." *See Mobley v. James*, 8th Dist. Cuyahoga No. 108470, 2020-Ohio-380 ("*Mobley I*").

{¶ 8} The Mobleys opted to pay for a home inspection of the Property, and in the inspector's written report, which is dated October 29, 2016, it is noted that there were "[e]levated moisture levels * * * at bottom of basement steps. * * * Future leaks are possible. * * * Seller has disclosed a history of backed up sewers."

**B. Attachments to the Complaint**

{¶ 9} Attached to the Mobleys' complaint are the following exhibits that the Mobleys incorporated by reference, which are relevant to this appeal:

- An "Offer to Purchase Real Estate and Acceptance" dated October 27, 2016, which states, in part, that the Mobleys accepted the Property "in its 'AS IS' PRESENT PHYSICAL CONDITION * * *."

- A residential property disclosure form, in which James attested that he did not know of any current or previous water intrusion issues with the Property.

- A document from "Ron" (the "Subsequent Disclosure") that states, in part pertinent to this case, the following:

  Sent to Neris on 10/26/16 via Email

  17606 Schenely

  * * *

  Basement sump pump:

  Many years before I bought this house, the previous owner, who was a "tinkerer," added the pump after there was a storm sewer backup in the neighborhood. It is NOT in use in order to keep the basement dry on a daily basis. It operated one or two time [sic] several years ago, when the storm sewers were overwhelmed again. The City has since cleaned them out and I have had no problems since.

  On occasion I run water into the sump and let the pump run for exercise. It was replaced about 5 years ago.

- The October 29, 2016 written home inspection report concerning the Property, which states, in part, that there were "[e]levated moisture levels * * * at bottom of basement steps. * * * Future leaks are possible. * * * Seller has disclosed a history of backed up sewers."

- The March 28, 2019 journal entry granting summary judgment to James in *Mobley I*, which states, in part, as follows:
  [The Mobleys] paid for and completed a home inspection * * *. On October 29, 2016, inspector * * * Jiknialis conducted the inspection with * * * Michael Mobley present. * * * Jiknialis recorded the inspection. Most significantly, the following exchange occurred:

Jiknialis: And we also talked about the potential for a sewer back up here.

Mobley: Because of the city, what's going on outside.

Jiknialis: Because of the infrastructure of the city, right. So if you buy these older places and I own one, you take a certain chance.

\* \* \*

In November 2017 and August 2018, [the Mobleys] suffered major water intrusion into their basement due to sewer back up. [The Mobleys] not only had the opportunity to inspect the property, they completed an inspection. That inspection disclosed the exact issue(s) for which they filed suit.

\* \* \*

Further, the Court finds it improbable that the [Mobleys] paid for a home inspection, attended the actual inspection, were given verbal warnings of potential problems with the basement, failed to follow-up with the inspector \* \* \* to receive the written inspection prior to sale, proceeded with the sale regardless, and now ask this Court to find they had no knowledge of the issues. Especially considering \* \* \* Michael Mobley was orally advised of potential problems during the inspection itself.

## C. The Judgment Entry

{¶ 10} On June 27, 2023, the trial court granted KW's motion for judgment on the pleadings, finding that all of the Mobleys' claims were "subsumed into their claim for professional negligence" and, thus, barred by the applicable four-year statute of limitations.

{¶ 11} It is from this order that the Mobleys appeal raising two assignments of error for our review.

I. The trial court committed reversible error by subsuming [the Mobleys'] claims into a professional negligence claim.

II. The trial court committed reversible error by extending the holdings of unrelated cases to find there is no discovery rule on statutes of limitations governing real estate agents.

## II. Law and Analysis

### A. Judgment on the Pleadings Civ.R. 12(C)

{¶ 12} Pursuant to Civ.R. 12(C), "after the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." We analyze a Civ.R. 12(C) motion for judgment on the pleadings "under the same principles that this court would apply in analyzing a motion to dismiss pursuant to Civ.R. 12(B)(6)." *Jordan v. Giant Eagle Supermarket*, 8th Dist. Cuyahoga No. 109304, 2020-Ohio-5622, ¶ 21.

{¶ 13} Civ.R. 12(B)(6) motions to dismiss are reviewed on appeal under a de novo standard. "A motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests the sufficiency of the complaint. * * * Under a de novo analysis, we must accept all factual allegations of the complaint as true and all reasonable inferences must be drawn in favor of the nonmoving party." *NorthPoint Properties v. Petticord*, 179 Ohio App.3d 342, 2008-Ohio-5996, 901 N.E.2d 869, ¶ 11 (8th Dist.). "For a trial court to grant a motion to dismiss for failure to state a claim upon which relief can be granted, it must appear 'beyond doubt from the complaint that the plaintiff can prove no set of facts entitling her to relief.'" *Graham v. Lakewood*, 2018-Ohio-1850, 113 N.E.3d 44, ¶ 47 (8th Dist.), quoting *Grey v. Walgreen Co.,* 197 Ohio App.3d 418, 2018-Ohio-6167, 967 N.E.2d 1249, ¶ 3 (8th Dist.).

{¶ 14} If an answer to a complaint raises the statute of limitations as an affirmative defense, "and the pleadings unequivocally demonstrate that the action

was commenced after the limitations period expired, Civ.R. 12(C) relief is appropriate." *Mangelluzzi v. Morley*, 2015-Ohio-3143, 40 N.E.3d 588, ¶ 9 (8th Dist.). In the case at hand, it is undisputed that KW raised the statute of limitations in their answer, and we limit our review of whether "the pleadings unequivocally demonstrate that the action was commenced after the limitations period expired" to the Mobleys' complaint, including the attachments, KW's answer, and the applicable law.

**B. Statute of Limitations**

{¶ 15} "[S]tatutes of limitations serve a gatekeeping function for courts by (1) ensuring fairness to the defendant, (2) encouraging prompt prosecution of causes of action, (3) suppressing stale and fraudulent claims, and (4) avoiding the inconveniences engendered by delay — specifically, the difficulties of proof present in older cases." *Doe v. Archdiocese of Cincinnati*, 109 Ohio St.3d 491, 2006-Ohio-2625, 849 N.E.2d 268, ¶ 10

### 1. Professional Negligence, Breach of Contract, and Breach of Fiduciary Duty

{¶ 16} Ohio courts have consistently held that the four-year statute of limitations set forth in R.C. 2305.09(D) applies to claims "sounding in professional negligence."[1] *Lewicki v. Grange Ins. Co.*, 8th Dist. Cuyahoga No. 112705, 2023-Ohio-4544, ¶ 24. In *Flagstar Bank, F.S.B. v. Airline Union's Mtge. Co.*, 128 Ohio

---

[1] We note that certain professional-negligence claims have separately specified statutes of limitations to which R.C. 2305.09(D) does not apply. *See, e.g.,* R.C. 2305.113(A) (the statute of limitations for medical-malpractice claims is one year); and R.C. 2305.11(A) (the statute of limitations for legal-malpractice claims is one year).

St.3d 529, 2011-Ohio-1961, 947 N.E.2d 672, ¶ 1, 5, the Ohio Supreme Court held that "the four-year statute of limitations for professional negligence, R.C. 2305.09(D), starts to run on the date of the alleged negligent act" rather than "the date that the negligent act causes actual damages." There is an exception to this general rule known as the discovery rule. *Id.* at ¶ 13.

> The discovery rule provides that a cause of action does not arise until the plaintiff knows, or by the exercise of reasonable diligence should know, that he or she has been injured by the conduct of the defendant. *Collins v. Sotka* (1998), 81 Ohio St.3d 506, 507, 1998 Ohio 331, 692 N.E.2d 581. The rule entails a two-pronged test — i.e., actual knowledge not just that one has been injured but also that the injury was caused by the conduct of the defendant.

*Id.* at ¶ 14. However, while the discovery rule applies to the statute of limitations concerning some causes of action, in Ohio, "the General Assembly elected not to include professional negligence claims within the discovery rule allowance in R.C. 2305.09." *Breaseale v. Infrastructure & Dev. Eng., Inc.*, 1st Dist. Hamilton No. C-230172, 2023-Ohio-4046, ¶ 14, citing *Flagstar & Investors REIT One v. Jacobs*, 46 Ohio St.3d 176, 546 N.E.2d 206 (1989).

{¶ 17} Furthermore, we note that "[c]ourts determine the applicable statute of limitations for a claim from the gist of the complaint and not from the label that party may assign to a set of facts." *Brust v. Kravitz*, 10th Dist. Franklin No. 16AP-201, 2016-Ohio-7871, ¶ 17. For example, in *Fronczak v. Arthur Anderson, L.L.P.*, 124 Ohio App.3d 240, 705 N.E.2d 1283 (10th Dist.1997), the court determined that a breach-of-contract claim against an accountant was really a professional-negligence claim in disguise.

[I]t is evident from * * * the amended complaint that the factual allegations supporting appellant's breach of contract claim are the same factual allegations supporting his accountant negligence claims, i.e., appellee's failure to provide a correct appraisal of the stock. In such circumstances, courts have routinely held that the breach of contract claim is simply a restatement of the negligence claims and that the four-year statute of limitations for professional negligence found in R.C. 2305.09(D) applies * * *.

*Id.* at 245.

{¶ 18} Upon review of the Mobleys' complaint, we find that the allegations of fact center around the proposition that KW "came into possession of information and documentation from * * * James, that was adverse to the position of the Mobleys in the transaction" to purchase the Property, "then failed to provide [this information] to the Mobleys at any relevant time * * *." The complaint further identifies this "information" as the Subsequent Disclosure that James allegedly emailed to Klimas on October 26, 2016. It is important to note that, in the complaint, the Mobleys do not deny knowing about the water-intrusion issues; rather, they allege that KW failed to disclose this information.

{¶ 19} In the Mobleys' professional-negligence claim, they allege that KW "fail[ed] to disclose to [the Mobleys] the [Subsequent Disclosure that KW] possessed related to the basement and sewer backups at" the Property. In the Mobleys' breach-of-contract claim, they allege that KW breached their "various obligations of disclosure, * * * which required [KW] to provide to [the Mobleys] the [Subsequent Disclosure] regarding the basement and the sewer backups * * *." In the Mobleys' breach-of-fiduciary-duty claim, they allege that KW "owed" and "breached their

fiduciary duties to" the Mobleys. We note that this court has held that a "claim of breach of fiduciary duty is basically a claim for negligence * * *." *Lombardo v. Mahoney*, 8th Dist. Cuyahoga No. 92608, 2009-Ohio-5826, ¶ 18.

{¶ 20} Upon review of the pleadings in the case at hand, we find that the Mobleys' claims for breach of contract and breach of fiduciary duty are duplicative of, and subsumed into, their claim for professional negligence. *See Chilton-Clark v. Fishel*, 10th Dist. Franklin No. 16AP-76, 2016-Ohio-7134, ¶ 10 (finding that the trial court did not err in determining that plaintiff's claims for breach of contract and breach of fiduciary duty "were essentially restatements of a professional negligence claim").

{¶ 21} Having established that the four-year statute of limitations applicable to professional-negligence claims begins to run on the date the negligent act took place, we look to the pleadings and applicable law to determine when the alleged negligent act took place in the instant case. According to the Mobleys' complaint, KW breached the following duty: "Not fail to disclose non-confidential information that might have an adverse effect on one party's position in the transaction[.]" Furthermore, the Mobleys allege in their complaint that KW "failed to share [the Subsequent Disclosure] with the Mobleys prior to their entering into * * * the purchase agreement, or the ultimate title transfer on December 21, 2016."

{¶ 22} As stated earlier in this opinion, the purchase agreement regarding the Property was entered into on October 27, 2016. As noted, title to the Property transferred on December 21, 2016. Thus, according to the Mobleys' complaint, the

negligent act took place sometime prior to December 2016. Therefore, according to Ohio law, the four-year statute of limitations for the Mobleys' professional-negligence claim, as well as their breach-of-contract and breach-of-fiduciary claims, began to run at the latest on December 21, 2016.

{¶ 23} The Mobleys filed the instant action against KW on December 13, 2022. This is outside of the four-year limitations period, which ended on December 21, 2020. As the Mobleys' claim for professional negligence, along with the two claims subsumed by the professional-negligence claim, are barred by the statute of limitations set forth in R.C. 2305.09(D), it appears from the pleadings that the Mobleys can prove no set of facts entitling them to relief. Therefore, the court did not err by granting KW's motion for judgment on the pleadings on these claims.

### 2. Fraud

{¶ 24} Pursuant to R.C. 2305.09(C), fraud claims are also subject to a four-year statute of limitations. We discuss the fraud claim separately because we decline to address whether or not fraud claims may be subsumed by professional-negligence claims when they are based on the same set of facts. In any event, we conclude that the Mobleys' fraud claim is barred by the statute of limitations.

{¶ 25} Unlike the statute of limitations regarding a claim for professional negligence, the statute of limitations concerning a claim for fraud may be tolled by the aforementioned discovery rule.

> The four-year limitations period in a fraud claim begins to run "'when the complainant has discovered, or should have discovered in the exercise of reasonable diligence, the alleged fraud.'" *Washburn v. Gvozdanovic*, 1st Dist. Hamilton No. C-160590, 2017-Ohio-2954, ¶ 17,

91 N.E.3d 164, quoting *Vanderlaan v. Pavlik*, 1st Dist. Hamilton No. C-150060, 2015-Ohio-5349, ¶ 13. A person should be aware that a fraud has occurred when the facts that she or he possesses would alert a reasonable person to the possibility of fraud. *Washburn* at *id.*, citing *Palm Beach Co. v. Dun & Bradstreet, Inc.*, 106 Ohio App.3d 167, 171, 665 N.E.2d 718 (1st Dist.1995).

*Riddick v. Taylor*, 2018-Ohio-171, 105 N.E.3d 446, ¶ 12 (8th Dist.).

{¶ 26} As argued in the Mobleys' appellate brief, the alleged fraud in the instant case occurred when they purchased the Property.

{¶ 27} In reviewing the pleadings in the case at hand, we find that five documents of note were attached to the Mobleys' complaint.

{¶ 28} First, they attached the purchase agreement for the Property, which is dated October 27, 2016, and states that the Mobleys purchased the Property "as is."

{¶ 29} Second, they attached the residential-property disclosure form that James filled out and signed in October 2016 as part of the parties' purchase agreement for the Property. In this form, James checked the box "No" when asked if he knew of "any previous or current leaks, backups or other material problems with the sewer system * * *."

{¶ 30} Third, they attached the Subsequent Disclosure, in which James revealed on October 26, 2016, that the Property had a history of water issues.

{¶ 31} Fourth, the Mobleys attached the written home-inspection report for the Property, which: (1) noted "[e]levated moisture levels" in the basement; (2)

warned that "[f]uture leaks are possible"; and (3) stated that James "has disclosed a history of backed up sewers." This report was dated October 29, 2016.

{¶ 32} Fifth, the Mobleys attached the March 28, 2019 journal entry granting summary judgment to James, which stated that Michael Mobley was present when the home inspection took place at the Property. This journal entry also detailed a conversation that the inspector had with Michael Mobley regarding the potential for water issues at the Property.

{¶ 33} In other words, from the pleadings in the case at hand, we can glean that the Mobleys knew of water issues with the Property prior to purchasing the Property.

{¶ 34} Additionally, in *Mobley I*, this court found that Michael Mobley testified at his deposition that he saw James's Supplemental Disclosure regarding the past water intrusion and the sump pump prior to closing on the sale of the Property. *Mobley I* at ¶ 41. This court further found that the home inspection provided the Mobleys with information regarding "the history of sewer backups" and the "potential for future sewer backups and water intrusion on the property during the home inspection." *Id.* at ¶ 38.

{¶ 35} Having established that the statute of limitations for fraud begins to run when the cause of action accrues, or when the plaintiffs "discovered, or should have discovered" that the defendant's conduct allegedly caused them harm, we find that the Mobleys' claim for fraud is barred. The Mobleys' complaint is based on KW having not informed them of water in the basement. But, as alleged by the Mobleys

themselves, they were on notice about water in the basement before the sale closed in December 2016. Therefore, any and all claims stemming from alleged harm from water in basement needed to be filed within four years of December 2016 at the latest. The Mobleys filed their complaint against KW in December 2022, which is two years after the four-year statute of limitations ran.

{¶ 36} Accordingly, the Mobleys' fraud claim was barred by the four-year statute of limitations, the court did not err by granting KW's motion for judgment on the pleadings concerning this claim, and the Mobleys' first and second assignments of error are overruled.

{¶ 37} Judgment affirmed.

It is ordered that appellees recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

LISA B. FORBES, PRESIDING JUDGE

MICHAEL JOHN RYAN, J., and
FRANK DANIEL CELEBREZZE, III, J., CONCUR