[Cite as *Carroll v. Cuyahoga Community College*, 2023-Ohio-3628.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

ROY M. CARROLL                                  :

    Plaintiff-Appellee,              :

                                             No. 112257

    v.                                         :

CUYAHOGA COMMUNITY
COLLEGE, ET AL.,                                :

    Defendants-Appellants.          :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART; REVERSED IN PART;
                  AND REMANDED
**RELEASED AND JOURNALIZED:** October 5, 2023

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-21-947925

---

### *Appearances:*

Stephen M. McGowan, *for appellee.*

David Yost, Ohio Attorney General, Holly E. LeClair Welch and Erin F. Kelly, Assistant Attorneys General, *for appellants.*

EMANUELLA D. GROVES, J.:

{¶ 1}  Defendants-appellants Cuyahoga Community College ("Tri-C") and its employees appeal the denial of their motion to dismiss plaintiff-appellee Roy

Carroll's ("Carroll") complaint for failure to state a claim upon which relief can be granted. For the reasons that follow we affirm in part, reverse in part, and remand.

**Procedural History and Factual Background**

{¶ 2} In 2013, Carroll suffered an injury that impaired his ability to work. He developed additional mental and physical issues subsequently, leading to steadily declining health. In 2017, Carroll sought assistance from Ohioans with Disabilities ("OWD"), which referred him to MetroHealth Hospital's Vocational Rehabilitation Program. After testing and evaluations, Metro and OWD recommended that Carroll go back to school. Carroll then enrolled to take courses for the fall semester at Tri-C. Carroll met with the student advisor for the Access Department (the "advisor"), which provided support to students with disabilities. As a result, Carroll received special accommodations to support his studies at Tri-C as a student with disabilities. These accommodations were delineated in a letter (the "Access letter").

{¶ 3} By 2019, Carroll had completed several classes and done very well at college. He was on the dean's list and invited to join a national honor's society. In July 2019, Carroll enrolled in a five-week condensed course at Tri-C titled "Religion 1010, Introduction to Religious Studies." During the pendency of the course, Carroll found that the professor was unwilling to abide by the terms of the Access letter. Carroll attempted to address this issue with her and ultimately with the staff of the Access Department. Per Carroll, he was eventually told that his rights had not been violated.

{¶ 4} The professor did comply with the Access letter for the final examination and provided Carroll's disability accommodations. However, Carroll received an overall grade of "C" for the class.

{¶ 5} Carroll was concerned with the way the Access Department and the professor acted and addressed his concerns with his advisor. Per Carroll, the advisor discouraged him from proceeding with further action. Carroll and his advisor had further discussions in which Carroll alleged the advisor described the professor as difficult. He also offered to go over Carroll's course list and point out professors who were unlikely to honor the Access letter.

{¶ 6} On August 6, 2019, Carroll received a letter from the Student Affairs Department. The letter asked Carroll to meet with that department and noted that failure to do so might lead to the university banning Carroll from enrolling in classes. Carroll did not attach a copy of the letter to his complaint. Carroll reached out to that department and the Access Department for more information. Per Carroll, he was told the letter and meeting were intended to assess how Carroll was doing at the school and if he needed any assistance. Carroll later learned that the professor had filed a complaint against him alleging "academic inconsistencies."

{¶ 7} After additional exchanges, Carroll obtained counsel and filed a complaint with the Ohio Civil Rights Commission ("OCRC") on October 2, 2019. On May 21, 2020, Carrol was notified that Tri-C and OCRC entered into a "2-Party Conciliation Agreement and Consent Order."

{¶ 8} On May 25, 2021, Carroll filed a complaint in the trial court against Tri-C, and its employees, including the professor, his advisor, other employees of the Access Department, Student Affairs Department, and Tri-C's representative before the OCRC. His amended complaint, filed on August 12, 2021, alleged: (1) disability discrimination in higher education (Count 1); (2) retaliation while engaged in a protected activity (Count 2); (3) harassment while engaged in a protected activity (Count 3); (4) intimidation while engaged in a protected activity (Count 4); and (5) intentional infliction of emotional distress while engaged in a protected activity (Count 5).

{¶ 9} On September 3, 2021, Tri-C filed a motion to dismiss the amended complaint pursuant to Civ.R. 12(B)(6) for failure to state a claim upon which relief could be granted. Relevant to this appeal, Tri-C alleged that it and its employees acting in their official capacities were immune from suit under R.C. Chapter 2744 for all claims.

{¶ 10} Tri-C alleged that it was a political subdivision entitled to immunity. Tri-C argued that Carroll's complaint failed to mention R.C. Chapter 2744 or raise allegations that would establish one of the exceptions to immunity in R.C. 2744.02(B)(1) through (5). Tri-C also alleged that it could not be found liable for the intentional torts of intentional infliction of emotional distress and retaliation.

{¶ 11} With respect to the individual employees who were subject to the lawsuit, Tri-C alleged that they were sued in their official capacities, and not as

individuals. As such, employees acting in their official capacity are the same as the entity and, for the purposes of immunity analysis, entitled to the same immunity.

{¶ 12} The trial court denied the motion, and Tri-C and its employees appealed assigning the following error for our review.

## Assignment of Error

The trial court erred in denying appellants' motion to dismiss, thereby denying appellants their right to political subdivision immunity under R.C. 2744 against all of appellee's claims.

## Jurisdiction

{¶ 13} Ordinarily the denial of a motion to dismiss would not be a final appealable order. However, when a trial court order denies a political subdivision or its employees the benefit of political subdivision immunity under R.C. Chapter 2744 that denial is a final appealable order. *Gates v. Leonbruno*, 2016-Ohio-5627, 70 N.E.3d 1110, ¶ 30 (8th Dist.); R.C. 2744.02(C). Accordingly, although the appellants' motion to dismiss addressed other issues, we confine our analysis to determine whether the court erred in denying appellants' political subdivision immunity. *Id.*

## Standard of Review – Denial of Motion to Dismiss Civ.R. 12(B)(6)

{¶ 14} An appellate court reviews a ruling on a motion to dismiss pursuant to Civ.R. 12(B)(6) under the de novo standard. *NorthPoint Props. v. Petticord*, 179 Ohio App.3d 342, 2008-Ohio-5996, 901 N.E.2d 869, ¶ 11 (8th Dist.). De novo review requires this court to use the same standard as the trial court to determine whether genuine issues exist for trial. *Northeast Ohio Apt. Assn. v. Cuyahoga Cty.*

*Bd. of Cty. Commrs.*, 121 Ohio App.3d 188, 192, 699 N.E.2d 534 (8th Dist.1997). Such a motion "is procedural and tests the sufficiency of the complaint." *NorthPoint Props.* at ¶ 11.

{¶ 15} In reviewing the complaint, "we must accept all factual allegations of the complaint as true and all reasonable inferences must be drawn in favor of the nonmoving party." *Id.*, citing *Byrd v. Faber*, 57 Ohio St.3d 56, 565 N.E.2d 584 (1991). A trial court may grant a motion to dismiss under Civ.R. 12(B)(6) if it appears "beyond doubt from the complaint that the plaintiff can prove no set of facts entitling her to relief." *Graham v. Lakewood*, 2018-Ohio-1850, 113 N.E.3d 44, ¶ 47 (8th Dist.), quoting *Grey v. Walgreen Co.*, 197 Ohio App.3d 418, 2011-Ohio-6167, 967 N.E.2d 1249, ¶ 3 (8th Dist.). We may only consider the four corners of the complaint and any documents properly incorporated within the complaint. *Katz v. Univ. Hosps. Health Sys.*, 8th Dist. Cuyahoga No. 111164, 2022-Ohio-3328, ¶ 12.

{¶ 16} If there is a set of facts that would allow the plaintiff to recover, the court may not grant a defendant's motion to dismiss under this rule. *Id.* at ¶ 13, citing *Woods v. Sharkin*, 2022-Ohio-1949, 192 N.E.3d 1174, ¶ 29 (8th Dist.).

**Specificity of the Complaint**

{¶ 17} Tri-C begins its challenge by noting that the complaint fails to mention R.C. 2744.02 at all or expressly address immunity or a waiver of immunity under R.C. 2744.02(B)(1) through (5). Tri-C alleges that the plaintiff has the burden of establishing that a political subdivision is not entitled to immunity. However, Ohio courts have not required this level of specificity at the pleading stage. Ohio is

a notice-pleading state that does not require a plaintiff to plead operative facts with particularity. *Granite City Ctr., LLC v. Bd. of Trustees*, 11th Dist. Trumbull No. 2020-T-0083, 2021-Ohio-1458, ¶ 21 citing *Cincinnati v. Beretta U.S.A. Corp.*, 95 Ohio St.3d 416, 2002-Ohio-2480, 768 N.E.2d 1136, ¶ 29. Notice pleading requires the plaintiff to set forth claims that "concisely set forth only those operative facts sufficient to give 'fair notice of the nature of the action[.]'" *Diaz v. Cuyahoga Metro. Hous. Auth.*, 8th Dist. Cuyahoga No. 92907, 2010-Ohio-13, ¶ 15 quoting *DeVore v. Mut. of Omaha Ins. Co.*, 7th Dist. Mahoning No. 5116, 1972 Ohio App. LEXIS 350 (Apr. 4, 1972).

{¶ 18} In the case of political subdivision immunity, this court has noted that "'a plaintiff need not affirmatively dispose of the immunity question altogether at the pleading stage.'" *Para v. Jackson*, 2021-Ohio-1188, 171 N.E.3d 452, ¶ 28 (8th Dist.), quoting Scott *v. Columbus Dept. of Pub. Utils.*, 192 Ohio App.3d 465, 2011-Ohio-677, 949 N.E.2d 552, ¶ 8 (10th Dist.). The plaintiff "'has no obligation to anticipate the assertion of an affirmative defense and allege facts to disprove that defense in its complaint.'" *Id.*, quoting *DSS Servs., L.L.C. v. Eitel's Towing, L.L.C.*, 10th Dist. Franklin No. 18AP-567, 2019-Ohio-3158, ¶ 10.

{¶ 19} With this framework in mind, we examine Carroll's complaint to see whether it alleges facts that would survive a political subdivision's claims of immunity.

**Analysis**

{¶ 20} The determination of whether a political subdivision is entitled to immunity under R.C. Chapter 2744 requires a three-tiered analysis. *Duncan v. Cuyahoga Community College*, 2012-Ohio-1949, 970 N.E.2d 1092, ¶ 18 (8th Dist.). A political subdivision is not liable for "damages in a civil action for injury, death or loss to person or property allegedly caused by an act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or propriety function"; except as provided in R.C. 2744.02(B). *Id.*; R.C. 2744.02(A)(1).

{¶ 21} The first tier acknowledges "the general rule that a political subdivision is immune from liability incurred in performing either a governmental function or proprietary function." *Colbert v. Cleveland*, 99 Ohio St.3d 215, 2003-Ohio-3319, 790 N.E.2d 781, ¶ 7.

{¶ 22} However, there are exceptions. In the second tier, the court must determine whether one of the five exceptions to immunity listed in R.C. 2744.02(B) apply, exposing the political subdivision to liability. *Id.* at ¶ 8.

{¶ 23} Finally, in the third tier, if one of the exceptions is found to apply and no defense in that section protects the political subdivision from immunity, the court must then determine whether any of the defenses to liability delineated in R.C. 2744.03 apply to provide a defense to the political subdivision against liability. *Id.* at ¶ 9.

{¶ 24} As this court has noted before, R.C. 3354.01(A) defines a community college district as a political subdivision of the state. Accordingly, under the first tier, Tri-C is entitled to blanket immunity. (*See Scott v. Dennis,* 8th Dist. Cuyahoga No. 94685, 2011-Ohio-12*; Duncan,* 2012-Ohio-1949, both finding that Tri-C is a political subdivision entitled to immunity under R.C. 2744.02).

{¶ 25} Political subdivision immunity covers both the governmental functions and proprietary functions of the political subdivision. R.C. 2744.02. One such governmental function is "[t]he provision of a system of public education." R.C. 2744.01(C)(2)(c). The phrase "system of public education" is not defined in R.C. Chapter 2744. Nevertheless, Ohio federal courts have found that the provision of higher education qualifies as a governmental function. *Hutsell v. Sayre*, 5 F.3d 996, 1002 (6th Cir.1993) ["H]igher education has long been recognized as a governmental function."); *Dvorak v. Wright State Univ.*, S.D.Ohio Case No. C-3-96-109, 1997 U.S. Dist. LEXIS 23804, at ¶ 21 (Sept. 2, 1997) ("[T]he provision of higher education is a governmental, rather than a proprietary, function.").

{¶ 26} Based on the foregoing, we analyze the exceptions to political subdivision as applied to a governmental function. The exceptions under R.C. 2744.02(B) are as follows:

> (1) [P]olitical subdivisions are liable for injury, death, or loss to person or property caused by the negligent operation of any motor vehicle by their employees when the employees are engaged within the scope of their employment and authority.
>
> (2) [P]olitical subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their

employees with respect to proprietary functions of the political subdivisions.

(3) [P]olitical subdivisions are liable for injury, death, or loss to person or property caused by their negligent failure to keep public roads in repair * * *.

(4) [P]olitical subdivisions are liable for injury, death, or loss to person or property that is caused by the negligence of their employees and that occurs within or on the grounds of and is due to physical defects within or on the grounds of, buildings that are used in connection with the performance of a governmental function * * *.

(5) In addition to the circumstances described in divisions (B)(1) to (4) of this section, a political subdivision is liable for injury, death, or loss to person or property when civil liability is expressly imposed upon the political subdivision by a section of the Revised Code * * *. Civil liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon a political subdivision, because that section provides for a criminal penalty, because of a general authorization in that section that a political subdivision may sue and be sued, or because that section uses the term "shall" in a provision pertaining to a political subdivision.

{¶ 27} R.C. 2744.02(B)(1) through (4) are clearly inapplicable to the facts of this case. Therefore, unless a section of the revised code "expressly" imposes civil liability against the political subdivision, Tri-C is entitled to immunity. R.C. 2744.02(B)(5). Courts have defined "expressly" as used in R.C. 2744.02(B)(5) to mean that the statute imposes liability "in an express manner: explicitly, definitely, directly." *Doe v. Adkins*, 2021-Ohio-3389, 178 N.E.3d 947, ¶ 61 (4th Dist.); quoting *Butler v. Jordan*, 92 Ohio St.3d 354, 357, 750 N.E.2d 554, 558 (2001).

{¶ 28} The *Doe* Court noted that where a statute uses a general term and defines that term such that it includes a political subdivision the statute expressly

imposes liability on that political subdivision. *See Cramer v. Auglaize Acres*, 113 Ohio St.3d 266, 2007-Ohio-1946, 865 N.E.2d 9, ¶ 21-28, quoting R.C. 3721.17(I)(1) and 3721.10(A)(3) (statute imposing liability on "any * * * home" expressly imposed liability on political subdivision when statutory definition of "home" included "'[a] county home or district home'"); accord *Bonkoski v. Lorain Cty.*, 2018-Ohio-2540, 115 N.E.3d 859, ¶ 9 (9th Dist.). *Id.*

{¶ 29} In contrast, where a statute uses a general term, such as landlord, that statute does not include a political subdivision or its employees merely because the political subdivision functions as a landlord. *Doe* at ¶ 61, citing *Moore v. Lorain Metro. Hous. Auth.*, 121 Ohio St.3d 455, 2009-Ohio-1250, 905 N.E.2d 606, ¶ 21 (statute imposing liability upon landlords as a general matter did not expressly impose liability upon political subdivision that provided public housing); *O'Toole v. Denihan*, 118 Ohio St.3d 374, 2008-Ohio-2574, 889 N.E.2d 505, ¶ 67 (statute that imposed liability upon a "person" without mentioning political subdivisions did not expressly impose immunity under R.C. 2744.02(B)(5)).

{¶ 30} Turning to the facts of this case, Carroll alleged with supporting facts in his amended complaint that Tri-C's conduct violated R.C. Chapter 4112. Under that chapter, it is "an unlawful discriminatory practice for any educational institution to discriminate against any individual on account of any disability." R.C. 4112.022.

{¶ 31} An "educational institution" includes a "state-assisted institution of higher education." *Id.* R.C. Chapter 4112 does not define "state-assisted institutions of higher learning"; however, R.C. 154.01 defines the term to include

> the state universities identified in section 3345.011 of the revised code, * * *, community college districts, * * * and other institutions for education, including technical education, beyond the high school, receiving state support or assistance for their expenses or operation.

R.C. 154.01(F).

{¶ 32} Accordingly, Tri-C is an "educational institution" under R.C. 4112.022.

{¶ 33} Civil liability is a remedy under R.C. Chapter 4112 against "whoever" violates the chapter. R.C. 4112.99. The remedies include "a civil action for damages, injunctive relief, or any other appropriate relief." *Id.* Anyone may file a charge with the OCRC claiming that another "person" is engaging in an "unlawful discriminatory practice." R.C. 4112.05(B)(1). An "unlawful discriminatory practice" is "any act prohibited by section 4112.02, 4112.021, or 4112.022 of the Revised Code." R.C. 4112.01(A)(8). A "person" is defined as, but not limited to, "the state and all political subdivisions, authorities, agencies, boards, and commissions of the state." R.C. 4112.01(A)(1). R.C. 4112.05 provides an administrative process that includes in its remedies alternative dispute resolution strategies, such as a conciliation agreement.[1] The statute does not prohibit a complainant from seeking civil

---

[1] "The commission may at any time attempt to resolve allegations of unlawful discriminatory practices other than allegations concerning unlawful discriminatory practices relating to employment by the use of alternative dispute resolution, provided

remedies. Accordingly, because a "person" includes a political subdivision, R.C. 4112.99 expressly imposes civil liability against a political subdivision.

{¶ 34} Tri-C argues that there is no statute that imposes civil liability that applies to this case and cites to *Johnson v. Washington Cty. Career Ctr.,* S.D.Ohio No. 2:10-CV-076, 2012 U.S. Dist. LEXIS 32206 (Mar. 12, 2012). *Johnson* is distinguishable. While that court found that R.C. 4112.022 did not expressly impose civil liability against a political subdivision, the court also declined the plaintiff's request that it examine the definitional statutes. Based on the applicable case law, Ohio courts have recognized that R.C. 2744.02(B)(5) applies when the definition of a term includes a political subdivision and civil liability is expressly imposed. We therefore conclude that Carroll's complaint alleges sufficient facts to support a finding that the exception under R.C. 2744.02(B)(5) could apply to remove Tri-C's blanket immunity.

{¶ 35} Under the third tier, we look to determine whether any defenses or immunities are reinstated pursuant to R.C. 2744.03. In viewing that section, only R.C. 2744.03(A)(3) and (5) could apply to the facts of this case, which provide as follows:

> (A)    In a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function,

that, before instituting the formal hearing authorized by division (B) of this section, it shall attempt, by informal methods of conference, conciliation, and persuasion, to induce compliance with this chapter." R.C. 4112.05(A)(2).

the following defenses or immunities may be asserted to establish nonliability:

\* \* \*

(3)    The political subdivision is immune from liability if the action or failure to act by the employee involved that gave rise to the claim of liability was within the discretion of the employee with respect to policy-making, planning, or enforcement powers by virtue of the duties and responsibilities of the office or position of the employee.

\* \* \*

(5)    The political subdivision is immune from liability if the injury, death, or loss to person or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner.

{¶ 36} Whether a defense under R.C. 2744.03(A)(3) or (5) apply in this matter goes beyond the four corners of the complaint because it requires a factual determination whether it was within the professor's discretion to deny disability accommodations to Carroll after he received an accommodation from the college, or whether an employee's conduct is manifestly outside the scope of employment; malicious, in bad faith, or done with wanton or reckless disregard. When reviewing a dismissal under Civ.R. 12(B)(6), if there is any set of facts under which the plaintiff can prevail, the motion must be denied. *Katz* at ¶ 13. Accordingly, because we have found that Carroll has sufficiently pleaded that an exception applies to Tri-C's blanket immunity, the trial court's decision denying Tri-C's Civ.R. 12(B)(6) motion to dismiss causes of action for disability discrimination (Count 1); harassment (Count 3); and intimidation (Count 4), is affirmed.

*Intentional Tort Claims*

{¶ 37} Finally, we examine Carroll's intentional tort claims. None of the exceptions to immunity in R.C. 2744.02(B) apply to intentional torts. Accordingly, it is well settled that a political subdivision is immune from intentional tort claims. *Fried v. Friends of Breakthrough Schools*, 8th Dist. Cuyahoga No. 108766, 2020-Ohio-4215, ¶ 23. Retaliation and intentional infliction of emotional distress are intentional torts for which Tri-C is immune from liability. Accordingly, the trial court erred when it denied the motion to dismiss as to those two counts.

{¶ 38} Accordingly, based on the forgoing, the trial court's judgment is affirmed in part and reversed in part to dismiss the intentional tort claims against Tri-C and the employees in their official capacities.

{¶ 39} Judgment affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

It is ordered that appellee and appellants split the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EMANUELLA D. GROVES, JUDGE

KATHLEEN ANN KEOUGH, P.J., and
MICHAEL JOHN RYAN, J., CONCUR