[Cite as *Shaker Hts. ex rel. Friends of Horseshoe Lake, Inc. v. Shaker Hts.*, 2024-Ohio-3007.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

CITY OF SHAKER HTS. EX REL.  :
FRIENDS OF HORSESHOE LAKE,
ET AL.,

       Plaintiffs-Appellants,     :

                                   Nos. 113019 and 113020
       v.                     :

CITY OF SHAKER HEIGHTS, OHIO,  :
ET AL.,

                                  :
       Defendants-Appellees.

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** August 8, 2024

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case Nos. CV-23-980292 and CV-23-980295

---

### *Appearances:*

Mansour Gavin LPA, Anthony J. Coyne, and Diane A. Calta, *for appellants*.

Roetzel & Andress, LPA, Stephen W. Funk, and Emily K. Anglewicz, *for appellees* City of Shaker Heights, City of Cleveland Heights, Shaker Heights City Council, and Cleveland Heights City Council.

William M. Ondrey Gruber, Director of Law for Shaker Heights, *for appellees* City of Shaker Heights and Shaker Heights City Council.

William R. Hanna, Director of Law for Cleveland Heights, *for appellees* City of Cleveland Heights and Cleveland Heights City Council.

EMMANUELA D. GROVES, J.:

{¶ 1} Plaintiffs-appellants, the Cities of Shaker Heights and Cleveland Heights, ex rel. Friends of Horseshoe Lake, Inc., an Ohio nonprofit corporation; three residents of Shaker Heights; and four residents of Cleveland Heights (collectively "Taxpayers") appeal the trial court's dismissal of their complaints. Upon review, we affirm the trial court's decision.

## I. Facts and Procedural History

{¶ 2} This case centers around the deteriorating Horseshoe Lake and Horseshoe Lake Dam, which are located on property owned by the City of Cleveland and leased by the cities of Cleveland Heights and Shaker Heights (collectively "Cities"). Taxpayers believe that Horseshoe Lake and Horseshoe Lake Dam are historically and recreationally important. They advocate for the dam's repair and rehabilitation and seek to prevent it from being decommissioned and removed.

{¶ 3} In their efforts to save Horseshoe Lake and Horseshoe Lake Dam, Taxpayers filed two separate complaints against Cleveland Heights, Shaker Heights, and their respective city councils on May 31, 2023. In the complaints, Taxpayers alleged that Cleveland Heights' and Shaker Heights' long-term leases with Cleveland ("Leases") obligated the Cities to operate and maintain the historic area where Horseshoe Lake Dam is located, including the upkeep and repair of the dam and the dredging of the lake. Taxpayers claimed that Horseshoe Lake Dam fell into disrepair

because the Cities failed to properly repair and maintain it. Taxpayers also claimed that the Cities were required to implement remedial measures documented in 2014 and 2023 reports by the Ohio Department of Natural Resources ("ODNR"). Taxpayers further alleged that in 2018 the Cities entered into an agreement with the Northeast Ohio Regional Sewer District ("NEORSD") whereby NEORSD agreed to undertake the rehabilitation of Horseshoe Lake Dam ("Rehabilitation Project Agreement"). However, NEORSD subsequently recommended the dam be removed despite the Rehabilitation Project Agreement still being in effect. Finally, Taxpayers claimed that allowing NEORSD to remove Horseshoe Lake and Horseshoe Lake Dam was contrary to the "vision" set forth in the 2005 Master Plan for Shaker Lakes Park ("Master Plan"), which emphasizes the importance of water in the "Horseshoe Lake experience." Taxpayers asserted that the Master Plan is "one of the most important guide documents that influences [Shaker Heights] policy to protect the quality of life of the community and ensure orderly future development."

{¶ 4} Taxpayers further indicated that they made written requests to the Cities' law directors in April 2023, demanding that they cease any further removal of Horseshoe Lake and Horseshoe Lake Dam and take immediate action to enforce the terms of these documents. However, the law directors declined to file any actions against the Cities. Accordingly, Taxpayers filed the instant complaints under R.C. 733.59 and Ohio common law "on behalf of the [Cities], and all [of their] citizens and taxpayers . . . ."

**{¶ 5}** Based on these allegations, Taxpayers asserted the following causes of action against Cleveland Heights and Shaker Heights: specific performance of the obligations created by the Leases, the Rehabilitation Project Agreement, and the ODNR reports, rules, and regulations, as well as any related local, state, or federal requirements; an injunction enjoining the removal of the dam; and a common law taxpayer's claim for specific performance and injunctive relief. Taxpayers also asserted an additional count for specific performance against Shaker Heights, seeking enforcement of the Master Plan. Taxpayers attached copies of the following documents to their complaints: prior NEORSD service agreements with the Cities; the Leases; the 2014 and 2023 ODNR reports; the Rehabilitation Project Agreement; a 2022 evaluation of certain assets associated with Horseshoe Lake and Horseshoe Lake Dam; a 2021 cost estimate containing additional expenses for the dam's rehabilitation; and the April 2023 written requests to the Cities' law directors. A copy of the Master Plan was also attached to the complaint against Shaker Heights.

**{¶ 6}** Taxpayers' lawsuits were consolidated in June 2023 and a case-management conference was set for July 24, 2023. On July 6, 2023, the Cities filed a motion to dismiss for lack of subject-matter jurisdiction and failure to state a claim under Civ.R. 12(B)(1) and 12(B)(6), arguing that Taxpayers sought relief beyond the scope of a permissible taxpayer action.

**{¶ 7}** More specifically, the Cities asserted that Taxpayers' claims related to the Leases must be dismissed based on the parameters of R.C. 733.59. The Cities contended that a taxpayer action must be filed "on behalf of" the municipality where

the taxpayer lives and cannot be brought on behalf of a third-party seeking to enforce a contract against the taxpayer's municipality. The Cities further claimed that none of the alleged conduct violated the Leases' terms.

{¶ 8} The Cities then argued that Taxpayers' claims related to the Rehabilitation Project Agreement must be dismissed because the relevant portions of the agreement were terminated by an amendment in 2023 ("Amendment"). Additionally, the Cities maintained that Taxpayers were once again seeking to stand in the shoes of a third party to enforce the terms of a contract against the Cities. The Cities attached certified copies of the Amendment, the Shaker Heights ordinance, and the Cleveland Heights resolution approving the Amendment to their motion to dismiss.

{¶ 9} Next, the Cities moved for dismissal of Taxpayers' claims related to statutory dam inspection and maintenance requirements and the 2014 ODNR report, arguing that only the Chief of the ODNR is authorized to bring a cause of action to enforce them. The Cities also claimed the 2014 ODNR report was superseded by the 2023 report, which expressly authorized the decommissioning of the dam.

{¶ 10} The Cities further sought dismissal of Taxpayers' claims related to the Master Plan, arguing that it was outside of the scope of a permissible taxpayer action because the plan does not impose any legal obligation on Shaker Heights. Finally, the Cities argued that Taxpayers' common law claims must be dismissed because

they involved the same facts and requests for relief as their statutory claims and, therefore, could not arise separately under Ohio law.

{¶ 11} On July 10, 2023, the trial court ordered Taxpayers to file a response to the Cities' motion to dismiss by July 17, 2023, and advised that reply briefs would not be accepted. Taxpayers filed a brief in opposition according to the trial court's order. Taxpayers argued that they did not file the complaints on behalf of third parties; rather, the lawsuits were brought on behalf of their municipalities, Cleveland Heights and Shaker Heights, respectively. Taxpayers contended that the Cities could bring an action to enforce obligations arising from the Leases and Rehabilitation Project Agreement, and, therefore, Taxpayers had a right to assert claims arising from those contracts.

{¶ 12} Taxpayers further argued that they sufficiently pled their claims related to violations of the Leases and that the 2014 ODNR report illustrated the Cities' failure to take required remedial measures. Taxpayers also claimed that they sought to enforce statutory requirements and the Chief of the ODNR's orders, rather than challenge the Chief's enforcement decisions.

{¶ 13} Taxpayers also alleged that the amendment to the Rehabilitation Project Agreement did not terminate the original agreement and the Master Plan was an enforceable guide plan. Finally, Taxpayers argued that they were entitled to maintain a common law claim in addition to their statutory claims because they were not seeking double recovery.

{¶ 14} On July 23, 2023, the trial court issued a journal entry granting the Cities' motion and cancelling the case-management conference. Absent further explanation, the trial court found that Taxpayers failed to state a claim and the court lacked subject-matter jurisdiction. (Journal Entry, 07/23/23.)

{¶ 15} Taxpayers appealed raising three assignments of error for review.

### Assignment of Error No. 1

The trial court erred by dismissing the complaints for failure to state claims upon which relief could be granted even through the complaints gave reasonable notice of the taxpayer claims contained therein and the bases for them.

### Assignment of Error No. 2

The trial court erred by dismissing the complaints for lack of subject-matter jurisdiction even though taxpayer actions are within the jurisdiction of Ohio courts of common pleas.

### Assignment of Error No. 3

The trial court erred by truncating the time in which to respond to the motions to dismiss and dismissing the case without identifying the bases for dismissal before the expiration of the period within which the complaints could be amended as of right.

## II. Law and Analysis

### A. Standard of Review and Motion to Dismiss

{¶ 16} A trial court's order granting a motion to dismiss under Civ.R. 12(B)(1) or 12(B)(6) is subject to de novo review on appeal. *Howard v. Ohio Dept. of Rehab. & Corr.*, 2024-Ohio-1948, ¶ 6-7 (10th Dist.). In applying the de novo standard of review, appellate courts must utilize the same standard employed by the trial court to determine whether genuine issues exist for trial. *Carroll v. Cuyahoga*

*Community College*, 2023-Ohio-3628, ¶ 14 (8th Dist.), citing *Northeast Ohio Apt. Assn. v. Cuyahoga Cty. Bd. of Cty. Commrs.*, 121 Ohio App.3d 188, 192 (8th Dist. 1997).

{¶ 17} Dismissal is required under Civ.R. 12(B)(1) when the trial court lacks jurisdiction over the litigation's subject matter. Subject-matter jurisdiction contemplates a court's power to hear and decide a case on its merits and render an enforceable judgment. *Zdolshek v. AGZ Properties, LLC*, 2024-Ohio-1284, ¶ 20 (8th Dist.), citing *State ex rel. Novak, L.L.P. v. Ambrose*, 2019-Ohio-1329, ¶ 10, and *ABN AMRO Mtge. Group, Inc. v. Evans*, 2011-Ohio-5654, ¶ 5 (8th Dist.). For example, the court of common pleas no longer has subject-matter jurisdiction to hear a case after matters that were once justiciable have been resolved to the point that they become moot. *Graham v. Lakewood*, 2018-Ohio-1850, ¶ 19 (8th Dist.), citing *Hirsch v. TRW, Inc.*, 2004-Ohio-1125, ¶ 11 (8th Dist.). In reviewing whether dismissal for lack of subject-matter jurisdiction is appropriate, courts must determine "'whether the complaint raises any cause of action cognizable by the forum'" and may consider evidence outside of the complaint to do so. *Id.* at ¶ 21, quoting *State ex rel. Ohio Civ. Serv. Emps. Assn. v. State*, 2016-Ohio-478, ¶ 12, and citing *Ohio Council 8, AFSCME, AFL-CIO v. Lakewood*, 2023-Ohio-4212, ¶ 9 (8th Dist.).

{¶ 18} Conversely, a motion to dismiss under Civ.R. 12(B)(6) "is procedural and tests the sufficiency of the complaint." *NorthPoint Props. v. Petticord*, 2008-Ohio-5996, 901 N.E.2d 869, ¶ 11 (8th Dist.). Accordingly, only the four corners of

the complaint and any documents properly incorporated therein may be considered. *Katz v. Univ. Hosps. Health Sys.*, 2022-Ohio-3328, ¶ 12 (8th Dist.). In reviewing the complaint, all factual allegations must be accepted as true and all reasonable inferences must be drawn in favor of the nonmoving party. *Petticord* at ¶ 11, citing *Byrd v. Faber*, 57 Ohio St.3d 56 (1991). A trial court may grant a motion to dismiss under Civ.R. 12(B)(6) if it appears "beyond doubt from the complaint that the plaintiff can prove no set of facts entitling her to relief." *Graham v. Lakewood*, 2018-Ohio-1850, ¶ 47 (8th Dist.), quoting *Grey v. Walgreen Co.*, 2011-Ohio-6167, ¶ 3 (8th Dist.). If there is a set of facts that would allow the plaintiff to recover, the court may not grant a defendant's motion to dismiss under this rule. *Id.* at ¶ 13, citing *Woods v. Sharkin*, 2022-Ohio-1949, ¶ 29 (8th Dist.).

{¶ 19} Finally, we address standing. To have standing, a plaintiff must show that (1) they suffered an injury, (2) the injury is fairly traceable to the defendant's unlawful conduct, and (3) the injury is likely to be redressed by the requested relief. *State ex rel., US Bank Trust Natl. Assn. v. Cuyahoga Cty.*, 2021-Ohio-2524, ¶ 8 (8th Dist.), citing *Ohioans for Concealed Carry, Inc. v. Columbus*, 2020-Ohio-6724, ¶ 12. This court has held that although standing is required to invoke the jurisdiction of the court over a particular action, a lack of standing does not affect subject-matter jurisdiction. *Cronin v. Governor of Ohio*, 2022-Ohio-829, ¶ 10 (8th Dist.), citing *Bank of Am., N.A. v. Kuchta*, 2014-Ohio-4275, paragraph three of the syllabus. Therefore, issues regarding standing are properly raised in a motion to dismiss

under Civ.R. 12(B)(6) rather than Civ.R. 12(B)(1). *Id.* at ¶ 10-11, citing *Revocable Living Trust of Mandel v. Lake Erie Util. Co.*, 2012-Ohio-5718, ¶ 11 (8th Dist.).

{¶ 20} With these principles in mind, we review Taxpayers' first and second assignments of error concurrently to determine whether the trial court erred by dismissing the complaints for lack of subject-matter jurisdiction under Civ.R. 12(B)(1) and/or failure to state a claim under Civ.R. 12(B)(6).

## B. Taxpayers' Claims

{¶ 21} "A plaintiff who ordinarily may not have standing concerning a [c]ity's 'abuse of corporate powers' may seek equitable remedies as a taxpayer under R.C. 733.56-733.59." *Graham*, 2018-Ohio-1850, at ¶ 19 (8th Dist.). A taxpayer of a municipality "may institute suit in his own name, on behalf of the municipal corporation" after the taxpayer issues a written request to the city's law director and the law director fails or refuses to institute an action based upon that request. R.C. 733.59.

{¶ 22} A taxpayer action is limited to the forms of equitable relief prescribed by R.C. 733.56 through 733.58. *Graham* at ¶ 19. In relevant part, R.C. 733.56 provides for

> an order of injunction to restrain the misapplication of funds of the municipal corporation, the abuse of its corporate powers, or the execution or performance of any contract made in behalf of the municipal corporation in contravention of the laws or ordinance[s] governing it . . . .

Pursuant to R.C. 733.57, specific performance of an obligation or contract made on behalf of a municipal corporation may be sought when the obligation or contract 1)

grants a right or easement or creates a public duty and 2) is being evaded or violated. Finally, R.C. 733.58 provides for a writ of mandamus to compel the performance of a duty when an officer or board of a municipal corporation fails to perform that duty expressly enjoined by law or ordinance.

{¶ 23} In addition to these limitations, "[a] taxpayer action is properly brought only when the right under review in the action is one benefiting the public." *State ex rel. Fisher v. Cleveland*, 2006-Ohio-1827, ¶ 10 (noting that the aim of a taxpayer action is well-established: notwithstanding any personal or private motive or advantage, the action must enforce a public right). Moreover, because the taxpayers stand in the shoes of their municipal corporation, their "'rights or claims are no greater than the rights of interests of the municipality.'" *Graham* at ¶ 4, quoting *Cincinnati ex rel. Ritter v. Cincinnati Reds, LLC*, 2002-Ohio-7078, ¶ 20 (1st Dist.).

{¶ 24} Here, as a preliminary matter, Taxpayers brought various specific performance claims under R.C. 733.57, injunction claims under R.C. 733.56, and common law claims for specific performance and injunctive relief. As mentioned by the Cities during oral argument, Taxpayers do not argue that the trial court erred in dismissing their common law claims or specific performance claims regarding the ODNR reports, rules, and regulations and related local, state, or federal requirements. Indeed, Taxpayers assert for the first time in their reply brief that the ODNR reports provide additional support for their taxpayer claims without providing any law in support or bases for their specific performance claim.

{¶ 25} Appellate courts are not advocates, and the appellant bears the burden of constructing the legal arguments necessary to support their assignments of error. *Lewicki v. Grange Ins. Co.*, 2023-Ohio-4544, ¶ 41 (8th Dist.), citing *Taylor-Stephens v. Rite Aid of Ohio*, 2018-Ohio-4714, ¶ 121 (8th Dist.) and *Doe v. Cuyahoga Cty. Community College*, 2022-Ohio-527, ¶ 26 (8th Dist.). And even if Taxpayers' contentions were fully developed, a reply brief is not the proper place to raise substantive arguments that were not included in the original briefing. *Oxford Mining Co., LLC v. Ohio Gathering Co., LLC*, 2020-Ohio-1363, ¶ 72 (7th Dist.), citing *Shutway v. Chesapeake Exploration LLC*, 2019-Ohio-1233, ¶ 77 (7th Dist.). Rather, App.R. 16(A)(7) establishes that an appellant's brief must include "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." Accordingly, we decline to review the trial court's dismissal of Taxpayers' ODNR-related specific-performance claims and common law claims.

### 1. Lease Claims

{¶ 26} Taxpayers argue in their first assignment of error that although the Horseshoe Lake Dam is not specifically identified in the Leases, its maintenance is required by various other terms included therein. Taxpayers insist that their action is not brought on behalf of Cleveland, but rather, to enforce a public duty imposed by the Leases. Taxpayers further claim that, based on the Shaker Heights and Cleveland Heights charters, the Cities' mayors must ensure that the Cities perform

their contractual obligations under the Leases because their terms directly benefit inhabitants.

{¶ 27} The Cities counter that Taxpayers are not seeking to enforce any rights on behalf of the Cities; rather, they are seeking to enforce Cleveland's contractual rights under the Leases, which can only be enforced by Cleveland in its capacity as the lessor. The Cities contend that because a taxpayer action must be brought "on behalf of the municipality," Taxpayers' cannot file suit on behalf of Cleveland, a third party. The Cities further claim that the Leases' terms establish that Cleveland is the only party with standing to prosecute an action against the Cities for an alleged breach. The Cities assert that the complaints fail to allege any facts demonstrating a breach of the Leases' terms. Finally, the Cities note that Taxpayers raised their argument concerning the Cities' mayors for the first time on appeal.

{¶ 28} To begin, we note that a party cannot raise new claims, issues, or arguments for the first time on appeal and a failure to raise an issue before the trial court results in a waiver of that issue for appellate purposes. *Garrett v. Cuyahoga Cty.*, 2022-Ohio-2770, ¶ 27 (8th Dist.), citing *Lycan v. Cleveland*, 2019-Ohio-3510, ¶ 32-33 (8th Dist.) ("It is well-established that arguments raised for the first time on appeal are generally barred and a reviewing court will not consider issues that the appellant failed to raise in the trial court.") and *Cleveland Town Ctr., L.L.C. v. Fin. Exchange Co. of Ohio, Inc.*, 2017 Ohio-384, ¶ 21 (8th Dist.) ("It is well established that a party cannot raise new arguments and legal issues for the first time on appeal,

and that failure to raise an issue before the trial court results in waiver of that issue for appellate purposes."). Consequently, Taxpayers waived any arguments they did not previously raise, including their arguments centering around the Cities' mayors and charters, and we need not address them here.

{¶ 29} Upon review of Taxpayers other arguments, we find that Taxpayers fail to state a claim upon which relief can be granted. Taxpayers attempt to stand in the shoes of the lessor, Cleveland, to enforce the obligations of the lessees, the Cities. Based on the record before us, it appears that Cleveland has not taken any action to enforce its rights under the Leases' terms. Here, the Taxpayers' claims represent a preemptive attempt to enforce not the rights of their Cities under the Leases, but the rights of a third party – Cleveland. But because Taxpayers stand in the shoes of the Cities in a taxpayer action, their rights or claims can be no greater than the rights or interests of their respective municipalities — Shaker Heights and Cleveland Heights. Indeed, Taxpayers acknowledge in their reply brief that "[t]he breaches enable the City of Cleveland to take adverse action in relation to the park." This is not the type of action contemplated by R.C. 733.59. Taxpayers fail to cite any authority for the proposition that under R.C. 733.59 taxpayers can compel their municipalities through specific performance and/or injunction to undertake obligations under a contract to preemptively ward off theoretical enforcement actions by a third party. Accordingly, Taxpayers lack standing to bring their claims regarding the Leases and their claims were properly dismissed under Civ.R. 12(B)(6). Based on these

findings, we need not consider whether Taxpayers sufficiently pled facts demonstrating purported violations to Leases' terms.

## 2. Rehabilitation Project Agreement Claims

{¶ 30} Additionally, in their first assignment of error, Taxpayers claim that under the plain language of R.C. 733.57, the Cities' law directors were required to enforce specific performance under the Rehabilitation Project Agreement because NEORSD "evaded or violated" its terms by refusing to repair the dam and ceasing work. Taxpayers also claim that R.C. 733.56 and 733.58 require the Cities' law directors to prevent the mayors from violating their duty to enforce contractual terms as required by the Cities' charters. In their second assignment of error, Taxpayers argue that the act of amending the Rehabilitation Project Agreement to substitute an inferior right, returning the area to "a more naturalized state," violated the mayors' duties and exceeded their authority under the Cities' charters. Taxpayers further claim that the Amendment is inadequate and ineffective because it lacks consideration, requires future agreements, and is indefinite. Finally, Taxpayers claim that the mutual waiver of rights under the Rehabilitation Project Agreement cannot terminate the agreement because termination prior to substantial completion of the project is prohibited.

{¶ 31} The Cities counter that Taxpayers' claims are moot because the parties executed the Amendment, eliminating the portion of the Rehabilitation Project Agreement relating to the repair and rehabilitation of Horseshoe Lake Dam. Cities argue that the Amendment is not invalid, rather it was expressly authorized

by the city councils of Shaker Heights and Cleveland Heights. The Cities note that Taxpayers did not raise their arguments regarding duties of the mayors, need for future agreements, and lack of consideration at the trial-court level. The Cities further assert that the terms of the Rehabilitation Project Agreement expressly provide that the parties may jointly modify the agreement in writing. Finally, the Cities argue that Taxpayers' claims were properly dismissed for failure to state a claim because there is nothing in the Rehabilitation Project Agreement that prohibits the decommissioning of Horseshoe Lake Dam and the NEORSD's prior obligations to repair and rehabilitate were eliminated by the Amendment.

{¶ 32} Again, we decline to review any claims, issues, or arguments not presented at the trial-court level, including those related to R.C. 733.58, the Cities' charters, the alleged duties of the mayors, and the purported need for future agreement and consideration. After assessing Taxpayers' remaining arguments, we find that the claims regarding the Rehabilitation Project Agreement are moot.

{¶ 33} In our review of the Rehabilitation Project Agreement attached to Taxpayers' complaints, we note that the agreement provides for modification upon written instrument executed by each party. We further note that the Amendment, attached to the Cities motion to dismiss, expressly provides that

> the [Horseshoe] Lake Dam repair aspect of the original Project as contemplated in the 2018 [Rehabilitation Project Agreement] is now an impossibility under the District's Regional Stormwater Management Program because: (a) the dam cannot be repaired or rehabilitated as described in the [Rehabilitation Project Agreement], due to its deteriorated condition, (b) repair would not bring the dam into compliance with ODNR requirements, and (c) the [NEORSD] has

determined that Horseshoe Lake does not provide stormwater management or flood control benefit that could make it a proper expenditure under the NEORSD Regional Stormwater Management Program; and . . . the [NEORSD] and the two Cities have, therefore, decided to amend the 2018 [Rehabilitation Project Agreement] to accept the [NEORSD's] recommendation to non-perform the [Horseshoe] Lake aspect of the Project, and instead, decommission [Horseshoe] Lake Dam, and return the lake bed to its naturalized state.

Taxpayers seek specific performance of the Rehabilitation Project Agreement despite this Amendment, but do not present a cognizable argument that the Amendment is contrary to the Rehabilitation Project Agreement's terms or that the Cities' councils lacked legislative authority to authorize it. Indeed, the Amendment is a written instrument executed by each party and approved by a Shaker Heights ordinance and Cleveland Heights resolution, both of which were attached to the Cities' motion to dismiss. Accordingly, Taxpayers' claims regarding the Rehabilitation Project Agreement are no longer justiciable and were properly dismissed under Civ.R. 12(B)(1) for lack of subject-matter jurisdiction.

### 3. Master Plan Claims

{¶ 34} Taxpayers[1] argue in their first assignment of error that the Master Plan, which was produced after a formal process with public meetings, is a "full-throated acknowledgment of the value of the contractual terms which the [Shaker Heights'] officers are now refusing to enforce" because it recognizes the importance of Horseshoe Lake. Taxpayers failed to cite any law in support of their argument.

---

[1] Under this section, "Taxpayers" refers only to the plaintiffs-appellants associated with Shaker Heights: Friends of Horseshoe Lake, Inc., and three Shaker Heights residents.

Shaker Heights counters that there is nothing in the Master Plan that imposes any binding contractual or legal obligations upon the municipality. Shaker Heights further notes that Taxpayers admit in their complaint that the Master Plan is merely a "guide" that "influences" policy.

{¶ 35} After reviewing the complaint, which incorporates the Master Plan, accepting all factual allegations as true, and drawing reasonable inferences in favor of Taxpayers, we agree with Shaker Heights and find that dismissal was appropriate under Civ.R. 12(B)(6). Taxpayers present no cognizable argument that Shaker Heights is obligated to perform pursuant to the Master Plan, as required by R.C. 733.56 and 733.57. Nor do Taxpayers establish that the Master Plan is anything beyond a "guide" that "influences" policy and presents a "vision" for the "Horseshoe Lake experience." (Complaint against Shaker Heights, 05/31/23). Accordingly, the trial court did not err in granting the Cities' motion to dismiss Taxpayers' claims related to the Master Plan.

## C. Procedural Challenges

{¶ 36} In their third assignment of error, Taxpayers claim the trial court abused its discretion by truncating the time in which they could respond to the Cities' motion in contravention of Civ.R. 6, dismissing the complaints without identifying the bases for dismissal, and dismissing the complaints prior to the expiration of the period within which the pleadings could be amended under Civ.R. 15(A). The Cities counter that Taxpayers' procedural arguments are meritless

because their objections were never presented to the trial court, are unsupported by caselaw, and are immaterial to the outcome of the case.

{¶ 37} "As a general rule, a trial court has the inherent authority to manage its own proceedings and control its own docket." *Perozeni v. Perozeni*, 2023-Ohio-1140, ¶ 31 (8th Dist.). Here, Taxpayers did not file a motion for extension of time to file their opposition to the Cities' motion to dismiss, object to or raise an issue with the truncated timeline, nor indicate that an amended complaint may be filed. Based on the record before us, we cannot say the trial court abused its discretion: the trial court's modifications to the briefing schedule and prompt dismissal of the action were a means of managing the proceeding and controlling its docket.

{¶ 38} As noted by the Cities, it is also well-settled that the trial court has no obligation to issue a written opinion with findings and conclusions when granting a motion to dismiss under Civ.R. 12. *Grimm v. Lynch,* 2011-Ohio-5189, ¶ 14 (8th Dist.), citing *Kovacs v. Aetna Life Ins. Co.*, 1994 Ohio App. LEXIS 1699 (8th Dist. Apr. 21, 1994) (holding that the trial court may dismiss a complaint in response to a Civ.R. 12 motion without explanation because a statement of findings of fact and conclusions of law is discretionary), citing *Vrabel v. Vrabel*, 9 Ohio App.3d 263 (8th Dist. 1983). There is no legal requirement that the trial court detail the reasons for its ruling on a Civ.R. 12 motion to dismiss because we independently assess the trial court's decision under the de novo standard of review on appeal. *Yankovitz v. Greater Cleveland Regional Transit Auth.*, 2023-Ohio-2584, ¶ 21 (8th Dist.). Accordingly, Taxpayers' third assignment of error is overruled.

## III. Conclusion

{¶ 39} Based upon our independent review of the record and relevant authority, we find that the trial court did not err in granting the Cities' motion to dismiss Taxpayers' actions for lack of subject-matter jurisdiction and failure to state a claim pursuant to Civ.R. 12(B)(1) and 12(B)(6).

{¶ 40} Judgment affirmed.

It is ordered that appellees recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

EMANUELLA D. GROVES, JUDGE

EILEEN A. GALLAGHER, P.J., and
EILEEN T. GALLAGHER, J., CONCUR